ALFRED W. THOMPSON AND
JONATHAN A. WATERS ET AL
vs
MARGARET A. DORSEY ET AL. } September Term, 1853.

[PARENT AND CHILD—LIMITATIONS—ACT OF 1849, CH. 224—GIFTS INTER VIVOS
OR MORTIS CAUSA.]

A FATHER is bound to educate and maintain his infant child, and if another person performs this natural duty for him, with his knowledge and consent, the father is liable to pay a reasonable sum to such person.

To such a case the Statute of Frauds has no application, for the debt is the debt of the father and not of the son, and therefore is not an attempt to charge him with the debt of a third person.

Where the real estate of an intestate is sold for the payment of his debts, the operation of the Statute of Limitations, so far as the heirs at law are concerned, is suspended for the space of eighteen months from the death of the intestate, by the act of 1849, ch. 224.

A party shortly before his death delivered a note due him to a friend, with directions to collect and apply it to certain purposes for the benefit of his wife, but died before the money collected was so applied. HELD—that this does not amount to a gift *inter vivos* or *mortis causa*, and the proceeds of the note belong to the estate of the deceased.

[The bill in this case was filed by creditors against the widow and administratrix, and heirs at law of Rinaldo Dorsey, deceased, charging the insufficiency of the personal estate to pay his debts, and praying for an account from the administratrix, and for a sale of the real estate for that purpose. After answer admitting these allegations, a decree for a sale was passed, and an account ordered. The property was sold, and the proceeds brought in, and on the 22d of February, 1853, a petition was filed in the case by John Warfield of Joshua, Margaret G. Warfield, and Ann Pierse, setting up several claims against the estate, that of said John Warfield being principally for board of the son of the intestate, from the 13th of September, 1839, to the 13th of May, 1850, at $50 per annum, making $533 33. The other claims, and the proof in support of them, are sufficiently stated in the Chancellor's opinion. The petition further charges that the said administratrix has omitted to return several debts, claims, &c. due the estate of her intestate, especially a note of G. Slothower for $80, payable to the intestate.

Margaret A. Dorsey, the administratrix, in her answer denies the validity and existence of these claims, and she, as well as the creditor's complainants, plead the Statute of Limitations thereto. In reference to the note of Slothower, she states that the same was delivered by the deceased some weeks before his death to George L. Stockett, to be delivered to one Baker Dorsey for collection through the bank, with express directions to receive the same and to apply it to certain dental operations to be performed on the teeth of respondent. That said note was delivered to said Dorsey, but that deceased departed this life before the money was so applied, and that the same remains in bank to this day, but she claims that said sum does not belong to the estate of the intestate, but by his express directions so given to the said George L. Stockett, was applicable to the purpose designated, and she claims the same, but is willing to abide by the order of the court in this behalf.

The testimony of John Warfield in relation to the claim of Margaret G. Warfield set up by the petition was, that sometime in the year 1849, not more than eighteen months before the death of Rinaldo W. Dorsey, he called upon Seth Warfield and witness to value a negro girl named Maria, which he had agreed to sell to Margaret G. Warfield at such price as he should agree upon, which was $75. R. W. Dorsey was owing money to Margaret G. Warfield, and the $75 was to be credited on her account against him, and witness wrote the credit on the back of a due bill about the time of the sale.

The testimony of Seth Warfield as to the same claim is that witness was called upon by R. W. Dorsey to value the negro girl which he had agreed to sell to his aunt, Margaret G. Warfield, at such price as John Warfield and witness should say she was worth; he valued her at $75 or $80. Witness is not certain about the mode of payment, but to the best of his recollection, Dorsey said he was owing his aunt money. Whether the girl was in payment of the whole or not, witness cannot say. The sale took place witness thinks sometime in the year 1849.

The testimony of Margaret G. Warfield in relation to the claim of Mrs. Ann Pierse is, that witness was present at the time

Dorsey renewed a note previously given to Mrs. Pierse, when he told the latter that he could not ascertain the amount of other moneys which he owed her without a reference to his books, which were at Dr. Worthington's. He came over a few days afterwards for the purpose of settling the open account, but stated that he had mistaken the key and could not get his books. He promised to go to Baltimore to see Mrs. Pierse and give his notes for the amount, but he never saw Mrs. Pierse afterwards. These moneys she had given him an order on Mr. Charles F. Mayer to receive for her.

The other testimony is sufficiently stated in the opinion of the Chancellor delivered upon the hearing of this petition.]

THE CHANCELLOR:

This case is submitted upon the petition of John Warfield of Joshua, and others, filed on the 22d of February last, the answer thereto of Margaret A. Dorsey, administratrix of Rinaldo W. Dorsey, and the proof in relation to the claim set up by the petitioners, taken under the order passed upon said petition.

The claim of John Warfield seems to me to be sufficiently proved. A father is bound to educate and maintain his infant child, and if another person performs this natural duty for him with his knowledge and consent, the father is liable to pay a reasonable sum to such person. The proof is conclusive to show that John Warfield did board the son of Rinaldo W. Dorsey, and that he knew and approved of it. The Statute of Frauds has no application to such a case. The debt is the debt of the father and not of the son, and therefore it is not an attempt to charge him with the debt of a third person.

But limitations are pleaded, and this defence covers and defeats a large part of the item of board. The charge for board commences on the 13th of September, 1839, and ends on the 13th of May, 1850. Limitations, therefore, bars the whole charge except that portion which accrued within three years from the time of filing the petition on the 22d of February, 1853. But with regard to the heirs at law, the operation of the statute is to be suspended for the space of eighteen months

from the death of the intestate, as provided by the act of 1849, ch. 224. Therefore, the period of eighteen months from the 15th of March, 1850, when, according to the testimony of Dr. Worthington, Mr. Dorsey died, is not to be computed, so far as the real assets are concerned. The item for cash paid Peter Gorman is barred, and must be rejected, so far as relates to the creditors who have relied on limitations.

The claim of Margaret G. Warfield appears to me to be proved, and the depositions of John Warfield and Seth W. Warfield remove the bar of the act of limitations. Rinaldo W. Dorsey acknowledged his indebtedness to Margaret G. Warfield in 1849, and the petition was filed in February, 1853, four years subsequently, but as with reference to the proceeds of real estate the operation of the statute must be suspended for the period of eighteen months from the death of the intestate the claim is saved.

The claims of Ann Pierse are proved. That founded on the single bill, it is admitted, is not barred. But in stating the claim of Ann Pierse, the Auditor will only charge the estate of the deceased, Rinaldo W. Dorsey, with the amount of the single bill, and the sums which appear by his own receipts to have been received by him of Mr. Mayer. Margaret G. Warfield was present when the single bill was executed on the 1st of October, 1849, when Dorsey admitted he owed Mrs. Pierse other moneys. This protects the claim from the plea of limitations as to the real estate, in view of the operation of the act of 1849, before referred to.

There is nothing in the proofs showing error in the administration accounts, or requiring the administratrix to be debited with any further sum except the amount received on the note of Slothower, which, according to the answer of the administratrix was delivered by the deceased to George L. Stockett. The circumstances stated in the answer do not amount to a gift *inter vivos* or *causa mortis*, and consequently the money collected on that note and now remaining in bank, must be accounted for.

J. T. B. DORSEY, for Petitioners.
STOCKETT, for Respondents.