## MARY E. EIRLEY *vs.* ELMER E. EIRLEY ET AL.

*Suspension of Statute of Limitations in Favor of Creditor's Claim Against Real Estate of a Decedent—Recovery for Services Rendered a Decedent.*

Under Code, Art. 57, sec. 8, when a decedent's personal property is insufficient to pay his debts, and there is a proceeding against his real estate to enforce payment, the Statute of Limitations is suspended in favor of the creditors for the period of eighteen months from the death of the decedent. The creditor's bill in this case against the real estate of an intestate debtor was filed in September, 1904. The intestate died in May, 1900, having made a new promise as to plaintiff's claim in the preceding month. *Held,* that the Statute of Limitations prescribing three years as the time within which to bring suits on contracts having been suspended for eighteen months, it is not a bar to the claim.

Upon a bill in equity by a creditor against the heirs of an intestate to enforce a claim for services rendered the decedent in boarding, lodging and nursing him for several years until his death in 1900, *held,* that the evidence shows that the decedent lived with, and was cared for by, the plaintiff from 1896 until the date of his death ; that he promised from time to time to pay the plaintiff and that the plaintiff expected to charge for her services, and that consequently plaintiff's claim is enforceable.

Appeal from the Circuit Court for Washington County (KEEDY, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Palmer Tennant,* for the appellant.

*Roger T. Edmonds,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

On the 2nd day of September, 1904, the appellant filed a creditors' bill in the Circuit Court for Washington County, against the appellees, who are heirs-at-law of one William H. Eirley, late of that county, deceased, to obtain a sale of certain real estate for the purpose of paying his debts.

The bill avers that the intestate was in his life time indebted to the appellant in the sum of two thousand and ninety

four dollars, "for personal attention in nursing, preparing meals, washing, mending clothes, room rent, etc., from April 1st, 1893, to July 31st, 1899, and from October 1st, 1899, to May 24th, 1900, at $300 per year."

It further charges that the intestate possessed no personal property at the time of his death, but owned certain real estate situate in Hagerstown, Md., subject to liens by way of mortgages, one for the sum of two hundred dollars, and another for one hundred dollars.

The prayer of the bill, in addition to the one for general relief, is that the real estate or so much thereof as may be necessary for the purpose be sold for the payment of the appellant's claim.

On the 23rd of September, 1904, the appellees, the heirs-at-law, answered the bill, wherein they deny the indebtedness as claimed by the plaintiff, and aver that if any existed it was fully satisfied and discharged by payment in the life time of the intestate. They also rely upon and claim the benefit of the Statute of Limitations as a bar to the plaintiff's claim.

The other matters charged in the bill are admitted by the answer to be true.

The appellee, Welsh, the assignee of the two mortgages against the property also answered the bill, and asserted the priority of her liens, in case of a sale of the property, but did not admit or deny the contentions of the plaintiff as alleged in the bill.

To the answer, the plaintiff replied, "a new promise" to the bar of the Statute of Limitations, and joined issue on the other defences made by the answer.

The case was heard on bill, answer and proof and from a decree of the Circuit Court for Washington County, passed on the 25th day of April, 1905, dismissing the plaintiff's bill, this appeal has been taken.

The plea of limitations interposed by the appellees in the case, cannot we think be allowed to prevail to defeat that part of the appellant's claim, revived by the new promise, made in the life time of the debtor.

Mr. Eirley died on May, 24th, 1900, and the bill in this case was filed on the 2nd day of September, 1904, that is, four years and three months after his death.

This being a proceeding in equity against the real estate of a debtor for the payment of his debts by reason of the insufficiency of the personalty, the operation of the Statute of Limitations is suspended in relation to the heirs for the period of eighteen months from the death of the decedent, that is, the statute is suspended in favor of the creditor as against the heir and devisees for the period named. Code, Art. 57, sec. 8; *Shepherd* v. *Bevans*, 4 Md. Ch. 408; *Thompson* v. *Dorsey*, 4 Md. Ch. 149; *Simms* v. *Lloyd*, 58 Md. 477.

The appellant's claim as set out in the record appears to be for personal attention, "in nursing, preparing meals, washing, mending, etc.," from April 1st, 1893, to May 24th, 1900, a period of six years and eleven months.

The proof, we think, is sufficient to establish the appellant's claim for services rendered from the year 1896 to the year 1900; but the remaining portion thereof will be denied.

The undisputed testimony shows that William H. Eirley lived with and was cared for by the appellant from March, 1896, to the date of his death. The witness, Margaret A. Rose, testified, the intestate said, in her presence as to the services since 1896, "she should be well paid, there wasn't a child that did as much for him as she did." The witness, Bragunier, testified as to a conversation held with him as late as April, 1900, as follows: "Q. In what way did she attend to him? A. Washing, mending, and everything that he needed. Q. Did he take his meals with her? A. Yes, sir, while I was there. Q. Did he board there and room there? A. Yes, sir. Q. Had a room there? A. Yes, sir, he stayed there. Q. Did you ever have any conversasation with him about Mrs. Eirley? A. Yes, sir, I did. Q. What conversation did you have with him? A. He sat down and talked to me when he had nothing to do and was telling me that it was too hard on Ellie (that's what he always called her); he said it was too much work for her to do and

he said he would pay her and pay her well for it. Q. Did he or not ever talk to you about the services that were rendered by her to him? A. Yes, sir. Q. What did he say? A. He said if it would not be for Ellie he would not live with Charlie; he said he would not stay there with him. He said she would not lose anything by it, he intended to pay and pay her well for it."

William Hose testified in answer to the question: "Q. Did you or not ever have any conversation with Mr. William H. Eirley regarding Mrs. Eirley, and the services rendered by her to him? A. Yes, sir. Well, I don't know as I could hardly just tell exactly word for word—we had a talk about Mrs. Eirley taking such good care of him, and in fact he stated that he hardly knew what he would do if it would not be for her, as she had taken very good care of him. He told me that he expected to, or intended to, or was going to pay her. I do not remember just exactly what were the words that were used."

There was other testimony to the effect that the services were rendered; that the intestate promised from time to time "to pay and to pay her well," and that the appellant expected to charge and to be paid for such services.

In view of this proof, we think it is clear that the appellant is entitled to recover for the services rendered from 1896 to 1900, at the rate of twenty-five dollars per month.

The law bearing upon a case of this kind, has been settled and determined by numerous decisions of this Court and we need not discuss it here. *Gill* v. *Donovan*, 96 Md. 518; *Gill* v. *Staylor*, 93 Md. 453; *Hamilton* v. *Thurston*, 93 Md. 213.

It follows that the decree of the Court below will be reversed and cause remanded for further proceedings, in accordance with this opinion.

*Decree reversed, cause remanded,*
*with costs.*

(Decided January 9th, 1906.)