# ADDISON COUNTY,

---

## Middlebury College v. Lyman A. Chandler.

A collegiate education is not ranked among those necessaries, for which an infant can render himself absolutely liable by contract.

But a good common school education is now fully recognized as one of the necessaries for an infant. Royce, J.

Book Account. The auditor appointed in the case reported that the plaintiffs' account, as presented before him, was for the quarter bills of the defendant, while a student in college,—including tuition, room, rent, use of library, repairs, sweeping, ringing the bell, and fines; and in reference to it he reported the following facts.

The defendant became a member of Middlebury College in Aug. 1836. He was then a minor, about fifteen years of age, and was sent by his father, who resided in the state of New York, to join the college, and was there supported by his father until his father's decease, which took place in August, 1837. The defendant continued to receive instruction at college for about a year after his father's decease, during which time he was furnished with the means for his support from the estate of his father. He never took a formal dismission from the college, and it did not appear that he ever informed the officers of his intention to leave. The President of the college had correspondence with the father of the defendant, after the defendant became a member of the college, and, was informed of the death of the defendant's father in the fall of 1837. It did not appear that the father of the defendant had ever assumed any express liability to the college, or that the defendant brought any line from his father at the time he came to enter college.

Upon these facts the auditor reported that he disallowed the plaintiffs' account, on account of the infancy of the defendant at the time the account accrued. The county court accepted the report of the auditor, and rendered judgment for the defendant; to which the plaintiffs excepted.

Middlebury College *v*. Chandler.

*Starr & Bushnell* for plaintiffs.

1. The plaintiffs' account is for necessaries furnished by the plaintiffs to the defendant on his request, and for which he is holden to pay. Lord Coke includes among necessaries, for which an infant may bind himself by contract, "good teaching and instruction, whereby he may profit himself afterwards." Co. Litt. 172. 3 Bac. Abr. 593–5.

2. Although, as appears by the report of the auditor, the defendant was sent to the college by his father, and furnished with funds for his expenses by him, it also appears that the father never assumed any liability to the college for his son, or even sent a line by him when he came on to enter the college. See 1 Swift's Dig. 52–3.

3. The living at home and being furnished with necessaries by the parent, which exempts the infant from liability for necessaries, does not apply where the infant goes abroad, and especially to another state, or country, for the purpose of education. It is his being domesticated in the family of the parent, and under his immediate supervision, which exempts the infant from liability for necessaries. *Angel* v. *McLellan*, 16 Mass. 28. *Crantz* v. *Gill*, 2 Esp. 471. 2 Kent's Com. 239. 1 Com. on Contracts 157, 166. *Wailing* v. *Toll*, 9 Johns, 141. 3 Bac. Abr. 595.

*E. D. Barber* for defendant.

1. It is contended on the part of the defendant that the plaintiffs' account is not for *"necessaries."* It is conceived that a college education has never been included among the "*necessaries*" for which a boy of fifteen, entirely destitute of means, would be legally liable. The question of what are, or are not, necessaries must be entirely a question of fact, dependent upon the circumstances and condition in life of the minor. Reeve's Dom. Rel. pp. 227–234. 1 Com. on Cont. 156–8. *Maddox* v. *Miller*, 1 M. & S. 738. *Ford* v. *Fothergill*, 1 Esp. R. 211. 8 T. R. 578. Bac. Abr., Infant. In this case it is manifest from the report that a college education was grossly inconsistent with the circumstances of the defendant, being, as he was, entirely destitute of means, or expectations. Especially is it difficult to conceive on what principal "*fines*" were necessary for the *defendant*;—they might have been for the college.

2. Even if the bills charged in plaintiffs' account can be con-

sidered "*necessaries,*" yet the defendant, as a minor, can not be made liable for them while living with, and being maintained by, his father; 3 Com. Dig., Tit. Infant, 545, 548; 1 Com. on Cont. 156–7; *Law* v. *Wilkin,* 6 Ad. & Ellis 718; 9 Johns. 141; *Angel* v. *McLellan,* 16 Mass. 31; *Cook* v. *Deaton,* 3 C. & P. 114; even without notice to plaintiffs, but especially if there is notice to the plaintiffs that such is the case. 2 Stark. Ev. 727. *Bainbridge* v. *Pickering,* 2 W. Bl. 1325. Chit. on Cont. 114, 118. He who trusts an infant is bound to inquire whether he is supplied by his parents, or friends. *Story* v. *Pery,* 4 C. & P. 526. *Cook* v. *Deaton,* 3 C. & P. 114. That such were the facts is manifest from the auditor's report.

The opinion of the court was delivered by

ROYCE, J. The report shows that the defendant was sent by his father to become a member of the college, when he can scarcely be said to have arrived at the age of even youthful discretion. And during the first year he was not only supported at college by his father, but a correspondence was carried on between the latter and the president of the college in relation to him. During the second year he was supported by funds received from his father's estate, the officers of college then knowing that his father was dead. It does not appear that any express undertaking of the father to pay the defendant's college bills was ever given, or that any such was ever given by the defendant. Under all these circumstances we are not prepared to say, that any implied promise can legally or justly be raised against the defendant. Whilst an infant is reasonably supplied by his relatives or friends, he cannot be personally charged, even for necessaries. But the decision of the auditor seems not to have proceeded upon this view of the case, nor does the report find whether the original credit was in fact given to the defendant. We are, indeed, left to infer from the alleged ground of his decision, that, in the opinion of the auditor, such a credit ought to be implied from the facts reported. It therefore becomes proper to consider the case, as if the items charged in the plaintiffs' account were actually furnished upon the defendant's express or implied contract to pay.

An infant may bind himself for necessaries. And the reason anciently assigned was, that without this power he might be exposed

to perish of want.  But though this was the alleged ground on which the infant's obligation was placed, yet the law has never limited its definition of the term *necessaries* to those things which are strictly essential to the support of life,—as food, clothing, and medicine in sickness.  The practical meaning of the term has always been in some measure relative, having reference as well to what may be called the conventional necessities of others in the same walks of life with the infant, as to his own pecuniary condition and other circumstances.  Hence a good common school education, at the least, is now fully recognized as one of the necessaries for an infant.  Without it he would lack an acquisition which would be common among his associates, he would suffer in his subsequent influence and usefulness in society, and would ever be liable to suffer in his transactions of business.  Such an education is moreover essential to the intelligent discharge of civil, political, and religious duties.

But it is obvious that the more extensive attainments in literature and science must be viewed in a light somewhat different.  Though they tend greatly to elevate and adorn personal character, are a source of much private enjoyment, and may justly be expected to prove of public utility, yet in reference to men in general they are far from being necessary in a legal sense.  The mass of our citizens pass through life without them.  I would not be understood as making any allusion to professional studies, or to the education and training which is requisite to the knowledge and practice of mechanic arts.  These partake of the nature of apprenticeships, and stand on peculiar grounds of reason and policy.  I speak only of the regular and full course of collegiate study ; for such was the course upon which the defendant professedly entered.  Now it does not appear that extraneous circumstances existed in the defendant's case, such as wealth, or station in society, or that he exhibited peculiar indications of genius or talent, which would suggest the fitness and expediency of a college education for him, more than for the generality of youth in community.  And we therefore consider that such an education should not be ranked among those necessaries, for which he could, as an infant, render himself absolutely liable by contract.

Judgment of county court affirmed.