## Fitler *versus* Fitler.

A mother, who has deserted her husband, retaining her child in her own custody, cannot, after a divorce obtained by the husband on the ground of such desertion, maintain an action against him for the support and maintenance of the child.

The father being able and willing to receive and support his child, cannot be made liable for its maintenance to one who wrongfully withheld it from him.

CERTIFICATE from the Court of *Nisi Prius*.

This was an action of *assumpsit* by Anna M. Fitler against Theophilus Fitler, for money expended by the plaintiff in the support and maintenance of the defendant's minor son. The defendant pleaded *non assumpsit*, and the statute of limitations; and on the trial, the jury found the following special verdict:—

That the above parties were duly married in June 1841. That a son, the fruit of said marriage, was born in April 1842. That on the 19th day of October 1844, a divorce of the parties was decreed on the libel of the husband, charging the wife with wilful desertion from his house before the birth of her son. That the mother has retained the custody of the child from his birth to this time, always providing him with sufficient boarding, lodging, medicine, attention, and schooling. That about the 10th of December 1853, the plaintiff, by her counsel, applied to the defendant to contribute to the support of the son, both past and future; and that the defendant, in answer, offered to take the boy and support him, as fully expressed in the letters of John Fallon, Esq., counsel of defendant, to D. P. Brown, Esq., counsel of plaintiff, dated respectively December 10th and 12th 1853, which letters are made part of this special verdict.

And the jurors further say, that from the 1st of December 1849, to the 10th of December 1853, the support and maintenance of said son, as rendered by the plaintiff, was reasonably worth thirteen hundred and fifty-two dollars ($1352); and that from the 10th of December 1853, to the 1st of December 1855, the support or maintenance of said son was worth the further sum of six hundred and seventy-six dollars ($676); but being uncertain, under the law of the land, whether the plaintiff is entitled to recover of the defendant both or either of the above sums, they say, that if the court should be of opinion that the plaintiff is entitled to recover the first of said sums, then they find for the plaintiff, and assess her damages at that sum: and if the court should be of opinion that, under the law, the plaintiff is entitled to recover both of said sums, then we find for the plaintiff, and assess her damages at the aggregate of said sums: but if the court should be of

[Fitler *v.* Fitler.]

opinion that the plaintiff is not entitled to recover either of said sums, then we find for the defendant.

The following are the letters referred to in the special verdict:—

" Dear Sir :

" Your note to Mr. Thomas Fitler, relative to his son, has been handed to me.

" Mr. Fitler instructs me to say, that he has heretofore been desirous to have the custody and charge of his son; and that he still continues of the same mind.

" If you will advise your client to give him up, you will not only confer a favour to Mr. Fitler, but, as he believes, do a very great benefit to the child. If given up to him, Mr. Fitler will cheerfully support and educate him; to do which, he is, in all senses, equally competent and able, as he is willing. Should Mr. Fitler's request be acceded to, please to have the boy sent to his father's business place in North Fourth street, during business hours.

" Very respectfully,
[Signed]          JOHN FALLON,
*For* T. FITLER.

" D. P. BROWN, Esq.
" Dec. 10th 1853."

" Dear Sir :

" Your note relative to Mr. Fitler, dated the 10th inst., has just been received. Had I made sufficient allowance for the apparent character of your client's feelings, and reflected that they would furnish the medium through which my note was to be read; I should have stated the reason given to me by Mr. Fitler, at the time he instructed me to request that, if the boy was to be sent to him, he should be sent to his place of business rather than his dwelling. Mr. Fitler is now, more than usually, closely confined to his business, in consequence of the sickness of his partner.

" He is to be found at his business place all day. He does not wish the boy to be sent to his house in his absence; but wishes to see him himself first, and take him home.

" The arrangement is so natural and proper, and this is so obvious a reason for it, that had you looked at the matter under the influence alone of your own good feelings, you could not have failed to attribute Mr. Fitler's request to the correct motive.

" As to the past conduct of either of the parties—a subject on which I have heard you, many years ago, at the time of the divorce, so eloquently discuss—I do not think it necessary for us to treat of in correspondence; but it does seem to me, that your observations as to the care of the child heretofore, come with bad grace from the representative of the mother, whose desire to have the custody

[Fitler *v.* Fitler.]

of her son has been thus far gratified, perhaps wrongly, by the father.

" If your client is willing to let Mr. Fitler have the child, and prefers placing him in his custody elsewhere than at his business place, Mr. Fitler will with pleasure call for the boy at any convenient time or place you may designate.

" Very truly yours,

[Signed]          JOHN FALLON,

*For* T. FITLER.

" D. P. BROWN, Esq.
   " Dec. 12th 1853."

The court below entered judgment for the defendant, on the special verdict, and the following opinion was delivered by WOODWARD, J.:—

" This suit was commenced December 1st 1855. The statute of limitations, duly pleaded by the defendant, cut off all of the plaintiff's claim that was prior to December 1st 1849.

" The jury have divided the period covered by the action, into two parts, that which preceded the offer of defendant to support the boy, and that which followed the offer; and they have apportioned the damages for each of these parts. This enables the court to enter judgment for the plaintiff, for either or both amounts assessed, or for the defendant generally. The question now is, what judgment does the law require should be entered upon the special verdict?

" The action was *assumpsit*. As there was no finding of an express promise to pay, the liability of the defendant, if any exists, results out of an implied promise, and the question, therefore, comes to this:—Will the law, upon such facts as are found in the special verdict, imply the promise of a father to pay for the support and education of his minor son?

" Promises to pay are sometimes implied from the *conduct* of the party to be charged, as where he sends to a shop for food or merchandise, or enters an inn to take refreshment, or requests another to perform services for him; and sometimes from the *duty* that is incumbent on the defendant, though there be no ·circumstances indicative of a promise. Thus, if a husband wrongfully discard his wife, or turn his wife or child out of doors, the law will imply a promise on his part to pay for the necessaries of life, by whomsoever furnished, to the wife or child, in the same way as if they had been supplied to himself at his request. So also, because a man is bound to bury his deceased wife, the law implies his promise to pay her funeral expenses, though he live in a distant land, and the expenses were incurred without his knowledge or consent: Jenkins *v.* Tucker, 1 *H. Bl.* 94; Chapple *v.* Cooper, 13 *M. & W.* 259. It is in such instances of implied contracts from clear legal

[Fitler v. Fitler.]

duties, that the ancient maxim is supported, *In fictione juris subsistit æquitas.*

"But it is not every duty that is sufficient to ground an action. There are what are called *imperfect* obligations, such as the duties of charity and gratitude, for which we are accountable to God alone, and of which no person has a right to require the performance; and there are natural obligations, which give the person in whose favour they are contracted, a right against us, not indeed in point of law, but in point of conscience. These moral obligations are enforceable only in *foro conscientiæ*, and not in courts of civil law. And it is essential to the action of *assumpsit*, even when founded on a duty which is in the nature of a legal obligation, that the service sued for should have been rendered with a view to compensation. The cause of action must have sprung from faith in the legal obligation, and not from some other and an inconsistent motive. We have several illustrations of this principle in our own books: 8 *Watts* 366; 5 *W. & S.* 357; *Id.* 513; 4 *H.* 488.

"Now the services rendered in all these cases were of a nature to deserve compensation, and yet compensation was denied, because they were rendered, not only on no contract for compensation, but on no footing of the defendants' obligations to pay for them.

"There is no duty more clear and imperative than that of a father to support his children during their minority. And though we have no statute enforcing it, except in case of pauperism, I hold it to be a legal obligation. He is absolutely bound to provide reasonably for their maintenance and education, even though they have property of their own; and if he neglect this duty, he may be sued for necessaries furnished, and schooling given, under just and reasonable circumstances. Chancellor KENT's observation, 2 *Com.* 196, is not more elegant than just;—that a parent who sends his son into the world uneducated, and without skill in any art or science, does a great injury to mankind, as well as to his own family, for he defrauds the community of a useful citizen, and bequeaths to it a nuisance.

"It is said that in England, independently of the statute 43 Eliz., c. 2, and other subsequent statutes, there is no legal obligation on a parent to maintain his child, and therefore a third person who may relieve the latter, even from absolute want, cannot sue the parent for a reasonable remuneration, unless he expressly or impliedly *contracted* to pay: 4 *East* 84; 2 *Starkie* 521. In order to bind a father in point of law for a debt incurred by his son, said Lord ABINGER, in Mortimer v. Wright, 6 *M. & W.* 486, you must prove that he has contracted to be bound, just in the same manner as you would prove such a contract against any other person.

[Fitler *v.* Fitler.]

"I do not understand that to be the rule in Pennsylvania. On the contrary, I suppose the law will imply the promise of a father to pay for necessaries furnished to a son, which he himself withholds. It is true, however, that the father has the right to furnish necessaries in his own measure and way, so that these be not unreasonable.

"Correlative to his duty of maintenance, is his right to the custody of his children, and to the value of their services and labor. He has a right to direct their education, and to enjoy their society.

"A divorce from their mother changes neither his duties nor his rights. He still bears the same relation to his children—is still bound to support and educate them, and is still entitled to their custody, society, and services. We do indeed administer this right of custody, with a careful regard to the age and condition of the infant, and to the character and circumstances of the respective parents; but the general rule is (and that is all I have occasion to state at present), that the father is entitled to the custody of the children, and it is usually enforced, unless adequate cause be shown against enforcing it.

"I have now adverted to all the principles which are necessary for the decision of the question before me. By his marriage with the plaintiff, the defendant became entitled not only to the custody of the children born in that relation, but to the possession of the plaintiff herself. She inflicted a double wrong on him, therefore, when she deserted him. To be ground of divorce, it must have been a wilful and malicious desertion and absence from his habitation, without a reasonable cause, for and during the term of two years.

"This was a violation of her marriage vow, and the bearing away of the unborn infant, though an inseparable incident of the conjugal wrong, was also a violation of the paternal rights of the defendant. Both mother and son belonged to him. From the time of the birth of the boy, the father was entitled to provide for him in his own house, and according to his own discretion.

"It is impossible to disguise the fact, that the plaintiff's action is rooted and grounded in wrong, in her wrongdoing, in her wanton and unjustifiable denial of her husband's rights. If it be said, that during the tender years of infancy the law would have allotted the boy to her for nurture, the answer is, that this action was not brought for those years. She made no legal demand for his support until after he was seven years of age. For the portion of his life covered by her action, the father was, beyond all question, entitled to the custody of the boy, and yet the mother withheld him in pursuance of her wrongful desertion. Will the law imply his

[Fitler v. Fitler.]

promise to pay a claim thus founded? May a father's son be wrongfully taken away and withheld from him, and then he be sued for support, maintenance, and education?

"In Van Valkenburg v. Watson, 13 *Johns.* 480, the plaintiff's claim for necessaries furnished a son was denied, on the ground that there was no evidence to charge the father with any neglect of duty in providing for the child. In Angell v. McClellan, 16 *Mass.* 27, it was held, that when a minor leaves his father's house voluntarily, for the purpose of seeking his fortune in the world, or to avoid domestic discipline and restraint, the father is under no obligation to pay for his support. If a father be not responsible for the support of a son who runs away, much less is he bound to indemnify a party who wrongfully takes away his son. A son eloigned is said to be entitled to his own earnings as a means of support, and perhaps a son carried off by force would be entitled to call on his father for support until he could return, but a demand by the party who carries him off stands on a different and less favourable footing. There was no evidence in this case, and of course no finding by the jury, that the father had ever shut his doors against his son, or that he had refused to receive and acknowledge him, and to provide for his necessities in a manner suitable to his condition in life.

"If the case had been so, the authorities would justify me in holding that the son carried with him the credit of the father for the means of support; and the divorced mother, as well as any stranger, might supply his necessities and charge the father. But so far from a case of that sort, we had evidence, and the jury have found, that in response to the only demand ever made upon him, the defendant offered to receive and provide for the boy whenever the mother would send him. He might, it is true, have coerced the delivery of the son, but a mere failure to assert his rights does not change the character of the original trespass, nor raise any implication in favour of the wrongdoer. Whatever his motive for not asserting his right of custody, and whatever her motive for retaining the boy, it is manifest that this is not the case of a father refusing support, but it is the case of a son withheld from the father in disregard of his parental rights. It is an attempt to compel a father to support his son outside of his own house, and according to a standard of discretion other than his own, and to which he has given no express assent.

"There is no *moral* obligation even, not to say legal, to support children in such a manner. The grounds of the action are destructive of parental authority, and subversive of the family relation; and it would be strange, if the law, ever jealous for these great fundamental interests of society, should so favour such grounds, as to maintain such an action.

[Fitler *v.* Fitler.]

" If the plaintiff may recover, any parent may have his children torn from him, be deprived of the opportunity to provide for them, to enjoy their society, or to direct their education, and then be sued for whatever outlays others may have made in their behalf.

" I do not think the law is so. But if herein I am mistaken, how can it be said the plaintiff rendered the support for which she sues, with any view to compensation; on the faith of any obligation of the father? She kept no account, and made no charges against the father. For eleven years she did not even ask him for help, and then she refused it in the manner in which it was proffered.

" It is too evident for doubt, that she preferred to toil for the boy, rather than surrender him to his natural guardian. As against the boy himself, this labour of love would give no legal claim: Cummings *v.* Cummings, 3 *Watts* 336, settles that. Much less would it give her any claim against his father. ·

" We do not suffer parents to recover for the support of children, nor children to recover for labour rendered to parents, unless there be an express contract—and why? Because the law refers such values to higher motives than prospect of pecuniary compensation, and will not imply promises to pay for them. If the law would not imply a promise in favour of the mother, as against the son who was benefited by her conduct, how unreasonable that she should expect a promise to be implied as against the father whom she wronged.

" I regret the necessity I am under to enter judgment for the defendant, because his mother did her whole duty to the boy, and did it well. It would gratify my feelings to see her ·compensated, but the law must have its course, and that demands that I enter judgment on the special verdict for defendant for costs.

" Judgment accordingly."

The plaintiff, thereupon, removed the cause to this court, and here assigned for error, that the court below erred in entering judgment for the defendant on the special verdict.

*J. M. Rush* and *A. H. Stewart*, for the plaintiff.

*J. Fallon*, for the defendant.

The opinion of the court was delivered by

LOWRIE, C. J.—It is not a true contract, inferred or implied from circumstances, that the plaintiff relies on. Such a one must be found by the jury before it can be enforced, and here it is not. But her reliance is on a constructive or fictitious contract, adopted by the law for the purpose of sustaining an action of *assumpsit* where a duty to pay arises out of the facts: 29 *State R.* 467.

Then the question is, what legal duty has the defendant violated in relation to this child or its mother? Did he wrong the

[Fitler *v.* Fitler.]

mother by gratifying her wishes, and suffering her to keep their child which she had wrongfully carried off? Certainly not. A wrongdoer cannot complain that the injured party did not resist or seek redress. She cannot complain of the expense of being allowed to have her own way. This cannot be made plainer. Kindness to the mother's feelings for her son cannot be enforced by law; and when it is exercised, it cannot be made the ground of a legal duty to do more. We must treat her as in the wrong, because the divorce, at his suit for her desertion, must be taken as proof of it.

Did the father wrong the child by not resisting the mother's wishes? Yes, if thereby the child was left without support, which is not the case. But to this the mother is the principal party; and how can she make her own wrong against another the ground of an action against him? She is claiming compensation for her own services and outlays, all growing out of a wrong done by her to him against whom she makes the claim. This cannot be allowed. The father is willing to take the child and support it himself. If she prefers to keep it, she can claim nothing from him as a right; and we cannot enforce the duty of generosity.

When a man abandons his child and casts it upon the public, he becomes liable for its support. But it is entirely impossible to treat a child as thus cast on the public, when the fact simply is, that the mother has deserted the father, and carried away the child and continues to support it. This is merely leaving it with her, until she chooses to restore it; and while she keeps it on such ground, she has no claim for compensation.

Judgment affirmed and record remitted.