GEORGE W. CORY *vs.* ABBY B. COOK.

PROVIDENCE—SEPTEMBER 30, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Husband and Wife.  Head of Household.  Contract for Board.*

Where board is furnished in a household, it is to be presumed, in the absence of any agreement to the contrary, or evidence that the wife furnished it out of her own estate, that the husband is entitled to compensation therefor.

(2) *Infants.  Necessaries.  Schooling.*

The word "necessaries" is a relative term, and is not limited to those things which are indispensable to the infant's personal support and comfort, but may include such an education as will fit him to earn a living in his chosen vocation and for the ordinary duties of life in the sphere in which he moves.

Where the infant's residence is such that the public schools do not furnish facilities for a broad education, including a business or commercial training, the question whether a father who has abandoned the infant is liable for the expenses of a commercial education, furnished the infant as reasonably necessary, should be left to the jury, together with evidence from which the jury can intelligently estimate the father's means.

*Quære,* whether a college or professional education could be classed with necessaries under any circumstances.

ASSUMPSIT.  Heard on petition of plaintiff for new trial, and petition granted.

TILLINGHAST, J.  The principal questions presented by the record in this case relate to the testimony and rulings of the court bearing upon the defendant's account in set-off.

The plaintiff is the son-in-law of the defendant, and his action is based upon a negotiable promissory note given by her to him on September 30, 1897, for the sum of $669, with interest at five per cent.  The account in set-off filed by the defendant is for board, clothing, care, schooling, etc., furnished to the plaintiff's minor daughter by the defendant.  The plaintiff had voluntarily abandoned his wife and children, and had left them with the defendant—his mother-in-law—before the time when the account in set-off commenced to run ; that is, before any of the articles mentioned in said account were furnished.

The amount of the plaintiff's note, with interest to April 17, 1902, when the verdict was rendered, was $821.10, and the claim in set-off, if fully allowed, amounted to $716.04. The jury found a verdict for the plaintiff for the sum of $71.08, and the case is now before us on the plaintiff's petition for a new trial on the grounds of certain alleged erroneous rulings of the trial court; that there was manifest error on the part of the jury in computing the amount due on the note; and also that the verdict was against the law and the evidence.

1. It is evident from the record that the jury made an error of $33.98 in computing the interest on the note, and that this error arose from their taking and adopting a computation of interest which had been made at a previous time and which appeared on the back of the note. Their verdict was therefore too small by the above amount, even conceding that they were warranted in allowing the defendant's account in set-off in its entirety. But we do not think they were warranted in allowing said account in full. There is uncontradicted evidence that the mother of the girl, Alice, furnished some of the articles enumerated and charged in the account in set-off, with money which she obtained elsewhere than from the defendant. It is true, the mother testifies that she only furnished a few of the things in this way, and that she cannot specify them or state what amount she paid for them. But as it devolves upon the defendant to prove her account or some part thereof specifically, and as the jury had no right to allow for any items not furnished by her, it is clear that their verdict, whereby they allowed the full amount of the defendant's set-off, was too small. And as it is impossible to determine from the present state of the record how much too small it was, it cannot be allowed to stand.

(1) 2. Plaintiff's counsel contends that as it appears in evidence that the defendant's husband was living with her as the head of the family during quite a part of the time covered by the bill of items, and that he provided for the family, paying the bills and "running the household," whatever board was furnished to the plaintiff's daughter was furnished by him and

not by the defendant, and hence that the latter cannot recover therefor.

In the absence of any evidence to the effect that the defendant furnished said board out of her own estate, or that her husband furnished it with the understanding that she was to receive the pay therefor as her own money, we think the plaintiff's point is well taken. Where board is furnished in a household it is certainly to be presumed, in the absence of any agreement or understanding to the contrary, that the head of the household is entitled to the compensation therefor. Moreover, it appears in evidence in the case at bar that after the death of defendant's husband, her son, John C. Cook, who had charge of settling his father's estate, and who was acting for his mother and sister (plaintiff's wife) in that regard, went to the plaintiff and attempted to have him allow, by way of part payment of a note held by him against the father, a claim, in favor of his father (defendant's husband), for the board of the girl Alice during the time that she boarded in the family prior to the death of his father. It would seem, therefore, that the defendant herself at that time treated the claim for board as being due to her husband's estate and not to her individually. The court correctly charged the jury upon this branch of the case as follows: "If you come to the conclusion, upon the testimony, that Charles Cook, the defendant's husband, who is now dead, was the head of the family and was entitled to recover for any board which had been furnished, then, for so much of that board as accrued prior to the death of Charles Cook, there can be no recovery or off set on the part of this defendant Abby B. Cook; and if you come to that conclusion it will bring you down to so much of the charges as have been made since the death of Charles Cook."

As the jury must have found that under the evidence the defendant's husband was not entitled to recover for said board up to the time of his death, and as said finding was clearly against the evidence, this furnishes another ground for a new trial.

(2)    3. Amongst the items contained in the defendant's account

in set-off is one for tuition, books, etc., amounting to $84.10. This amount was paid by the defendant for sending the plaintiff's daughter Alice to a commercial school in Fall River, Mass., for the purpose of giving her a knowledge of bookkeeping, so that she might be enabled thereby to earn her own living. Plaintiff's counsel objected to this item, on the ground that it was not in the line of necessaries, and requested the court to instruct the jury that the plaintiff was not liable therefor; but the court left it to the jury to say whether said charge was a reasonable and proper one, in view of the plaintiff's means.

Whether, in view of the extreme weakness of the evidence bearing upon the financial standing of the plaintiff, this request might not properly have been granted, we need not now decide. But if, in another trial of the case, evidence shall be produced from which the jury can intelligently estimate the father's means, we think that it should be left to them, under the circumstances, to say whether the schooling furnished was not reasonably necessary, and whether the father is not liable for the expense incurred by the defendant in furnishing it.

That a father who abandons his minor children is liable to those who furnish necessaries for their support upon his credit, is a proposition too well established to be questioned.

The general liability of the father to support and provide for his children continues until they are in a condition to provide for themselves; and it is not limited to the bare necessaries of life, but includes all of those things which are reasonably necessary to the comfort, health, training, and education of the child suitable to his degree and station. In Schouler's Domestic Relations, 5th ed. section 411, the author says: "Food, lodging, clothes, medical attendance, and education, to use concise words, constitute the five leading elements in the doctrine of the infant's necessaries. But to apply a practical legal test, we must construe these five words in a very liberal sense, and somewhat according to the social position, fortune, prospects, age, circumstances and general situation of the infant himself." Smith on Contracts, p. 269, says:

"It is well established by the decisions that under the denomination '*necessaries*' fall, not only the food, clothes, and lodging necessary to the actual support of life, but likewise means of education suitable to the infant's degree, and all those accommodations, conveniences and even matters of taste which the usages of society, for the time being, render proper and conformable to a person in the rank in which the infant moves." In *Breed* v. *Judd*, 1 Gray, 455, Thomas, J., in delivering the opinion of the court, says: "It would be difficult to lay down any general rule upon this subject and to say what would or would not be necessaries. It is a flexible, and not an absolute term, having relation to the infant's condition in life, to the habits and pursuits of the place in which, and the people among whom he lives, and to the changes in those habits and pursuits occurring in the progress of society. . . . We suppose an infant who had learned the trade of a carpenter might be charged with a chest of tools necessary to do his labor as a journeyman; or a laborer with his pick-axe and spade. If the going to California to labor was, in view of the plaintiff's situation and condition in life, a reasonable and prudent step, it would be difficult to say that he might not be charged with the expenses of the outfit." In *Stone* v. *Dennison*, 13 Pick 1, Shaw, C. J., in delivering the opinion of the court, said: "A contract for subsistence, clothing, and education is a contract for necessaries, and is one, therefore, which the minor has capacity to make, and which, if reasonable and beneficial, will be supported by law." See also Dwight on the Law of Pers. pp. 287–9; *Middlebury College* v. *Chandler*, 16 Vt. 683; *Peters* v. *Fleming*, 6 M. & W. 45; *Thompson* v. *Dorsey*, 4 Md. Ch. 149; Am. & Eng. Ency. of L., vol. 16, 2nd ed. 278–9; *Peacock* v. *Linton*, 22 R. I. 328.

It is clear from the foregoing statements of the law (and they are well supported by authority) that the word "*necessaries*" is a relative term and is not limited to those things which are indispensable to the infant's personal support and comfort. Whether a college or a strictly professional education could be classed with necessaries under any circum-

stances, we are not called upon to decide. But that such an education and training as will fit one for the ordinary duties of life in the sphere in which he moves, and enable him to earn a respectable and honest living in his chosen vocation, should be so classed we have no doubt. And we do not agree with the contention of plaintiff's counsel that, simply because the State, through its public school system, furnishes the facilities for a common school education, the father cannot be held liable for anything in the way of supplemental or additional training for the child. This must also be left to depend upon the circumstances of the case. If the child lives in a city like Providence, for instance, where, under its very superior system of public schools, which system includes both mental and manual training, he can obtain at the public expense an education which is probably equal, if not, indeed, superior in practical value to a college education of a century ago, it may perhaps be doubted whether the father could be legally held liable for anything in addition thereto in the way of educational training. But where, as in the case at bar, the child lives in a country town, the schools of which do not furnish, and cannot be expected to furnish, those facilities for a broad education, including a business or commercial training, which many city schools do furnish, we do not think it would be reasonable to hold that the father, by reason of the existence of public schools in the town, is *necessarily* relieved from all liability for the additional training of his child.

4. During the trial of the case it came out in evidence that shortly after the plaintiff left his wife and children he assigned to her a mortgage on certain real estate, which she subsequently foreclosed, and realized the sum of $1,800 therefrom. And it is claimed by the plaintiff that this mortgage was assigned to her without consideration, and for the purpose of enabling her to support herself and children. The plaintiff's counsel therefore requested the court to charge the jury as follows: "If the plaintiff in this case assigned the Cook mortgage to his wife for the support of herself and children, then, unless she was expressly authorized by him

to do so, she was not his agent to procure board and clothing and services for them or herself at his expense, until the money capable of being realized on said mortgage by its sale or foreclosure had been first used up for such support." The court said : "That I have already instructed you, and that request I grant." As the jury allowed the defendant's account in set-off in full, it is evident that they did not find that the mortgage was assigned to the wife for the purpose claimed. Nor do we see how they could have so found, under the evidence. All that appears from the evidence which was admitted by the court is that the plaintiff assigned said mortgage to his wife, and that she foreclosed the same with the result aforesaid. But whether she paid any consideration therefor, whether it was in payment of a debt which he owed her, whether it was a mere gift, or what it was for, the evidence does not disclose ; and hence the jury were fully warranted in disregarding it altogether. Of course it will be competent for the plaintiff to prove, if he shall be able, at the next trial of the case, that said mortgage was assigned for the purpose claimed by him. And if he succeeds in so doing he will clearly be entitled to the instruction requested and granted by the court, as aforesaid, relating thereto. For it goes without saying that if the plaintiff made proper provision, in this way, for the support and education of his children, the defendant has no legal claim against him.

The verdict is set aside, and a new trial granted.

*Darius Baker*, for plaintiff.

*William P. Sheffield, Jr.*, for defendant.