## Fusco Estate

*Wayne S. Luce,* for petitioner.

REED, P. J., September 25, 1958.—It is the law of this Commonwealth that the duty of a parent to support and maintain his children includes the child's education. It is also the law that it is only where the parent (father) is without any means or is without adequate means that an allowance will be made from the child's separate estate for the child's education: In re Harland's Accounts, 5 Rawle 323 (1835) ; Newport v. Cook, 2 Ashmead 332 (1841). See also 67 C. J. S. §15(c).

In Commonwealth v. Gilmore, 97 Pa. Superior Ct. 303, 308, the court, citing authorities, set forth the applicable principles in this language:

"The law, apart from statute has come to recognize that paternal duty involves, in addition to provision for mere physical needs, such instruction and education as may be necessary to fit the child reasonably to support itself and to be an element of strength, rather than one of weakness, in the social fabric of the state. Thus in Fitler v. Fitler, 33 Pa. 50, Mr. Justice Woodward said by way of obiter, it is true: 'There is no duty more clear and imperative than that of a father to support his children during their minority. And though we have no statute enforcing it, except in case of pauperism, I hold it to be a legal obligation. He is absolutely bound to provide reasonably for their maintenance and education, even though they have property of their own; and if he neglect this duty, he may be sued for necessaries furnished and schooling given, under just and reasonable circumstances. Chancellor Kent's observation, 2 Com. 196, is not more elegant than just—that a parent who sends his son into the world uneducated and without skill in any art or science, does a great injury to mankind, as well as to his own family, for he defrauds the community of a useful

citizen, and bequeaths to it a nuisance.' In Middlebury College v. Chandler, 16 Vt. 683 (1844), it was said: 'The practical meaning of the term (necessaries) has always been in some measure relative, having reference as well to what may be termed conventional necessities of others in the same walk of life with the infant as to his own pecuniary condition and other circumstances. A good common school education, at the least is now fully recognized as one of the necessaries for an infant. Without it he would lack an acquisition which would be common among his associates, he would suffer in his subsequent influence and usefulness in society and he would ever be liable to suffer in his transaction of business. Such an education is moreover essential to the intelligent discharge of civil, political, and religious duties.' In Kilgore v. Rich, 83 Me. 305, 22 Atl. 176, necessaries for which the father was held liable included the son's board bill while attending school. In Cory v. Cook, 24 R. I. 421, 53 Atl. 315, the term was held to include 'all of those things which are reasonably necessary to the comfort, health, and education of the child suitable to his degree and station.' But in a number of cases the term was held not to include a collegiate or professional education. In the matter of Ryder, 11 Paige 185; Turner v. Gaither, 83 N. C. 357; Streitwolf v. Streitwolf, 58 N. J. Eq. 570, 43 Atl. 904. It is only under 'favorable circumstances' that a collegiate education is one of the necessaries: Peacock v. Linton, 22 R. I. 328; 47 Atl. 887. 'Some kind of education has been included from early times within the class of necessaries for which an infant may contract. The early cases, however, seem to have confined this to elementary or vocational education and even in the later cases, a college, university or professional education has generally been excluded; though it has been judicially suggested that it might

be allowed in a case where the infant's ability and prospects justified it': 14 R. C. L. Sec. 35, p. 258."

We are of the opinion that a college education can and should be, in these times, classified as necessary and a necessity.

It is also the law of this Commonwealth that an orphans' court, in exercising its equitable powers, must always be zealous in guarding and protecting a minor's principal estate. Income received by a guardian of the estate of a minor may be expended, in the exercise of a reasonable discretion, for care, maintenance and education of the minor without the necessity of court approval: Fiduciaries Act of April 18, 1949, P. L. 512, sec. 1084.

In the petition we are now considering we are asked to make allowance from the minor's estate of the sum of $1,000 for the purpose of paying tuition and other expenses for the school year 1958-59 at the University of Pittsburgh, and a like sum for the years 1959-60 and 1960-61, provided said minor continues to attend the university during said school years and is successful in attaining a normal school year's scholastic advancement.

While this court has no established rule, it has been our policy and practice to follow the rule of Allegheny County (O. C. rule 29, sec. 6) that beyond high school grades no allowance will be made for educational purposes for a period of more than one year.

The petition presented to the court in the instant case made no reference to the financial status or ability of the parents of the minor and for that reason we directed that a hearing be held on September 19, 1958, which hearing was thereafter continued at the request of counsel for petitioner to Monday, September 22, 1958.

From the testimony taken at that hearing it appears that the minor was born July 27, 1940, and is

presently 18 years of age, that his estate in the hands of his guardian amounts to $5,083.26, which funds are the result of a settlement of a personal injury case. The minor resides with his parents in a home in the Borough of Beaver which is free of debt. There is no disclosure made as to its value. His father is a barber whose gross income in 1957 was $8,480.35 and the net income $4,-727.64. His mother is also employed and during the year 1957 had an income of $1,621.79. The parents have two savings accounts, one totaling $4,117.44 and the other $3,529.89 or a total of $7,647.33. It also appears that the minor is to receive a tuition scholarship totaling $300 at the university for the 1958-59 school year and, in addition, that he has what his father termed a trust fund for him of his earnings and amounts added by his parents in the sum of $1,922.63. This last named fund is not in the possession or under the control of the guardian. Residing with the parents and the minor is their daughter and the minor's sister who is presently 12 years of age and for whom there is also what the parents term a trust fund now totaling $523.02.

Under the rules above set forth we are of the opinion that the requested allowance should not be made at this time. We are of the opinion that the fund characterized as a trust fund for the son totaling $1,922.63 should first be expended toward the cost of his education before any amount should be paid out of the guardianship fund. The testimony presented to the court would seem to indicate that the parents are in a financial position to contribute a substantial sum toward the minor's education. However, we do not pass upon this question at this time. When the time arrives that the so called trust fund of $1,922.63 has been expended on account of the minor's education a further petition can be presented to this court at which time we will give careful consideration to the use of the

minor's funds on the basis of the then existing circumstances and in the light of the parents financial ability to contribute for this purpose. We commend the parents and the minor in his desire to attain an education but we feel that under the existing circumstances the court is without authority at this time to make the allowance prayed for. For this reason, the prayer of the petition is denied.

Same day, exception granted and bill sealed to Beaver Trust Company, guardian of the Estate of Richard A. Fusco.