**CALOGERAS, Plaintiff, v. CALOGERAS, Defendant.**

Juvenile Court, Cuyahoga County.

No. 141117. Decided December 29, 1959.

Thomas R. Chase, Cleveland, for plaintiff.
Arthur P. Lambros, Cleveland, for defendant.

## OPINION

By WOLDMAN, J.

### THE FACTS

This cause originally came to the Juvenile Court upon certification of jurisdiction from the Common Pleas Court of Cuyahoga County on July 31, 1947. The divorce decree, dated December 21, 1946, provides in part:

"It is further ordered, adjudged and decreed that the custody, care, and education of her minor children, Athena, 7 years of age, and James, 6 years of age, is hereby awarded to the plaintiff and the defendant pay to the plaintiff the sum of $60.00 per month for the support of the minor children, payable semi-monthly until further order of the court."

On July 31, 1947, the custody and support of the children was certified to the Juvenile Court of Cuyahoga County. On a subsequent date, November 25, 1957, the Juvenile Court modified the support order as to James and ordered the father to pay $15.00 per week for the support of said minor.

Athena, the oldest child of the parties, is now in a convent and her support is no longer an issue. The other child, James, became eighteen years of age in April, 1959, and he is now a student at John Carroll University. On July 30, 1959, the mother, plaintiff herein, filed a Motion in Contempt, against defendant for failure to pay support for James from April 8, 1959, on, and also for failure to pay medical expenses incurred by the plaintiff for the two children.

Defendant ceased support payments for James upon his attaining the age of eighteen, which occurred on April 8, 1959, at which time James was attending high school. Since then James has enrolled at John Carroll University under a full tuition scholarship. At the oral hearing before the Court it was testified that he still resides with his mother and is dependent upon his parents for support if he is to continue his studies; that as a condition of continuing his scholarship it is necessary for him to maintain a high quality of scholarship; that his employment during the past year provided only enough to pay some of his book expenses; and that other expenses of his college education, plus living expenses, are not covered by the scholarship or otherwise. The evidence further disclosed that the defendant is remarried and has four children by his present wife.

On April 20, 1959, after the minor, James, reached his eighteenth birthday, the defendant voluntarily agreed to pay $15.00 a week toward the care and support of James "until he graduates from high school." The defendant now objects to continuing these payments to enable James to obtain a college education.

## THE LAW

Patently the Juvenile Court's criminal jurisdiction over a parent to compel the support of a minor child terminates when the child becomes eighteen years of age. Sec. 2151.42 R. C., provides in part as follows:

"No person charged with the care, support, maintenance or education of an illegitimate child or a legitimate child under eighteen years of age shall fail to care for, support, etc. . . ."

However, it is equally patent that the Juvenile Court's jurisdiction of a child continues until the child is twenty-one years of age. This is apparent from §2151.38 R. C., which provides in the last sentence thereof as follows:

"All other commitments by the court shall be temporary and shall continue for such period as designated by the court in its order, or until a child attains the age of twenty-one years."

As was said in Slawski v. Slawski, 49 Oh Ap 100; 1 O. O. 201:

"The jurisdiction of the Juvenile Court having attached when the child is under eighteen years of age, the child continues to be the ward of the court until attaining the age of twenty-one years."

This statement of the Court is based on §1643 GC, which is analogous to §2151.38 R. C., supra.

The jurisdiction of this court up to twenty-one years of age is further strengthened by the fact that this case was originally certified to this court from the Common Pleas Court. Where jurisdiction is certified from the Common Pleas Court to the Juvenile Court, the Juvenile Court acquires the jurisdiction of the Common Pleas Court. As in said in Sonnenberg v. State, 40 Oh Ap 484:

"We are of the opinion that the purpose of this legislation as manifested by a consideration of §8034-1 GC (§3109.06 R. C.), in conjunction with §1642-1 GC (§2151.23 R. C.), is to clothe the juvenile court with jurisdiction to proceed in divorce cases which have been certified to it, in a matter respecting the custody and support of a minor, as the common pleas court would have been authorized originally to do. . ."

There can be no doubt of the statutory obligation of a father to support his legitimate child during the child's minority. Sec. 3103.03 R. C., provides in part as follows:

"The husband must support himself, his wife, and his minor children out of his property or by his labor . . ." (Emphasis added.)

The age of majority is defined by §3109.01 R. C., which provides as follows:

"All persons of the age of twenty-one years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes."

Interpreting the above statutes, §7997 GC (§3103.03 R. C.), and §8023 GC (§3109.01 R. C.), the Court in Mieszkalski v. Mieszkalski, 44 Oh Ap 152, held that a father's duty to support does not stop when a child reaches eighteen years of age.

It was also held in Slawski v. Slawski, 49 Oh Ap 100; 1 O. O. 201, as follows:

Syl. 1. The jurisdiction of the Juvenile Court having attached when

a child is under eighteen years of age, the child continues to be the ward of the Court until attaining the age of twenty-one years.

Syl. 2. A father's duty to furnish support to a minor child does not cease upon the child's arrival at the age of eighteen.

Syl. 3. Where a Common Pleas Court, having made an award of the custody and an order for the support of a minor child, certifies the same to a Juvenile Court for further proceedings, pursuant to §8034-1 GC (§3109.06 R. C.), and the jurisdiction of the Juvenile Court attaches before the minor is eighteen years of age, the jurisdiction of that court to act in the matter continues until the minor attains the age of twenty-one years.

On the matter of the Juvenile Court's jurisdiction, the Court of Appeals in Slawski v. Slawski, supra, made the following statement:

"We think, therefore, that the Juvenile Court had jurisdiction to make all lawful orders made necessary by reason of noncompliance with the order made in the Court of Common Pleas awarding amounts for the support of the minor child."

**Thiessen et al v. Moore et al, 105 Oh St 401, ruled:**

In a divorce, alimony, custody, support and maintenance proceeding the court is without power to make a decree with reference to the maintenance of minor children beyond the date when such children shall arrive at their majority.

**Miller v. Miller et al, 154 Oh St 530, 43 O. O. 496, held:**

In a divorce action, where a child of the parties attains his majority, authority of the court over such child comes to an end, and the court is without power to provide for the support of or aid to such child or to continue a provision for his support. (Thiessen v. Moore, 105 Oh St 401, approved and followed.)

## QUESTION: DOES SUPPORT "DURING MINORITY" INCLUDE PAYMENT FOR A COLLEGE EDUCATION?

Generally under the Ohio law a father is required to furnish "necessaries" for his minor child (under twenty-one years of age) and the father's obligation to support ceases when the child reaches his majority, becomes self-supporting or is emancipated.

The question here to be resolved is: does a father's obligation to furnish "necessaries" during the child's minority contemplate paying for a college education?

On the point that the parental obligation of providing the support of minors extends only to "necessaries," 30 O. Jur. 607 states:

"At an early date, it was said that necessaries for an infant include 'his necessary meat, drink, apparel and physic; and likewise good teaching and instruction whereby he may profit himself afterwards,' but modern authorities extend the term to include many of the conveniences of refined life, according to the circumstances and conditions of the parties." 20 R. C. L. 625.

However, in 1928 an Ohio Court of Appeals in the case of Wynn v. Wynn, 6 Abs 450, held that parental obligation to furnish "necessaries" does not comprehend a college education. The court laid great stress on the fact that the compulsory school law required attendance only until eighteen years of age. "The sole question at issue in this case,"

said the court, "is whether or not the court having jurisdiction of the custody and care of this minor in the divorce case, can require the father to support this 20-year-old minor son in college after he is past compulsory school age and has had all and more education than is required under the compulsory school age law." (The minor had graduated from high school and attended one year at college.) The court ruled:

"We find no law requiring a parent to send a minor child to college. While it is a laudable act on the part of a parent to send a child to college, especially where such child has the desire to go and the ability to profit by it, we know of no law substituting the judgment of the court for that of the parent as to whether or not the parent shall send his child to college after such child has had more education than the compulsory school law requires and the child is past the compulsory school age."

A recent case in the Cuyahoga County Court of Appeals, **Mitchell v. Mitchell, 81 Abs 88**, Ohio Bar, Aug. 3, 1959, following the ruling of the Wynn v. Wynn case, held:

"The furnishing of a college education to children is a voluntary act of the parents and in the absence of contract a court cannot in a divorce decree compel or order such education as part of the support of minor children."

This case probably has limited application since it arose by reason of an effort on the part of the mother of the children to obtain the modification of a separation agreement which had been made a part of the divorce decree, by increasing the amount of the children's support through an additional contribution by the father of $500.00 per year per child for a college education. By this additional award, said the Court of Appeals, "the trial judge exercised a power not granted to him by the law of Ohio."

The Mitchell case can further be distinguished from the instant case in that in the Mitchell case the award for a college education was not limited to the minority of the children.

The recent (1958) case of **Robrock v. Robrock, 167 Oh St 479**, although it upholds the order upon the father to pay for his son's college education even beyond the son's minority, has no direct bearing upon the instant case, inasmuch as the Robrock decision is based upon the enforcement of an agreement incorporated in the divorce decree.

Probably the earliest reported case in this country involving the question as to whether a college education is a necessity is Middlebury College v. Chandler, 16 Vt. 683, 42 Am. Dec., 537, where a suit was brought to recover from the son whose father was now deceased, tuition and other bills which represented a charge for his minor son, as a student at the College. This case appears to be authority and is referred to by nearly all text writers upon the question. The court there refused to hold that a college education was a necessary.

The Middlebury decision written in 1844, stated:

"The practical meaning of the term (necessaries) has always been in some measure relative, having reference as well to what may be called the conventional necessities of others in the same walks of life with the

infant as to his own pecuniary condition and other circumstances. Hence a good common school education, at least, is now fully recognized as one of the necessaries for an infant . . . but it is obvious that the more extensive attainments in literature and science must be viewed in a light somewhat different. Though they tend greatly to elevate and adorn personal character, are a source of much private enjoyment, and may justly be expected to prove of public utility, yet in reference to man in general, they are far from being necessary in a legal sense. The mass of our citizens pass through life without them . . ."

In a proceeding subsequent to a decree of divorce against him, brought by a father to have modified an allowance of $50.00 per month for the support of his minor son, the custody of whom had been awarded to the mother, on the grounds that the son, seventeen years of age, had completed his high school course and was able to support himself, and that the petitioner's income had decreased, to which application for modification the defense was raised that such allowance was necessary to permit the minor son to obtain a college education, the court, in Morris v. Morris (1930) 92 Ind. App. 65, 171 N. E. 386, held that the lower court erred in dismissing the petition, for the reason that a parent was under no legal duty to give his minor child a college education, it not being a necessary. The court distinguished Esteb v. Esteb (1926) 138 Wash. 174, 244 P. 264, 246 P. 27, 47 A. L. R. 110, by stating that the present case did not involve circumstances wherein a child showed a peculiar aptitude for some chosen vocation.

The court in Halsted v. Halsted (1930), 228 App. Div. 398, 239 N. Y. S., 422, holding that the father's obligation to support the children terminated upon their reaching majority, added: "Unlike the furnishing of a common school education to an infant, the furnishing of a classical or professional education by a parent to a child is not a 'necessary' within the meaning of that term in law. Especially is this so where the child has become of age. It may be that unusual circumstances might make the furnishing of a professional or classical education to an infant a necessary, enforceable in law against a parent, but that question is not here, since the children have become emancipated; each has attained her majority, and the circumstances of the parties preclude such a holding."

An order, upon application for additional alimony pendente lite by the wife, directing the husband to pay the tuition and cost of books to enable his nineteen-year-old son to attend night law school, was reversed in Streitwolf v. Streitwolf (1899), 58 N. J. Eq. 570, 43 A. 904, 45 L. R. A. 842, where there had been no order awarding custody to either party to the divorce action and the husband objected to such course of study on the grounds that his son was unfitted for law and that he desired him to go into business. It was stated that while the right of a wife to support pending suit embraced provision for the suitable maintenance of herself and children who were dependent on her, including the expense of ordinary education, it would not be extended, against the opposition or without the acquiescence of the husband, to include the cost of the professional training of a grown-up son not in the custody of the wife.

However, a number of courts have taken the view that a father may be required to provide his minor child, not in his custody, with a college education if the child has evinced an aptitude therefor. And where the custody has been awarded the mother, it is for her to determine what education the child should have.

Thus in Esteb v. Esteb (1926), 138 Wash. 174, 244 P. 264, 246 P. 27, 47 A. L. R. 110, it was held that an allowance of $60.00 per month, ostensibly for the support of a minor daughter, whose custody had been committed to the mother by a decree of divorce from the defendant, but in reality to enable the daughter to attend college and fit herself for her chosen profession of teaching, for which she was especially adapted, was proper, the financial situation of the defendant (father) being such that the payment could be made without difficulty. The salient points of this decision are set forth in the syllabi as follows:

"Divorced father could be compelled to provide funds for college education of minor child in custody of mother where capacity of said child for further education had been plainly shown.

"Though law presumes that father having custody of child will provide education for it, in vocation for which it is best fitted, opinion of mother as to necessity for education will be accepted in proceeding to modify divorce decree to provide for child's support where she was given custody after divorce."

Using reasoning similar to that appearing in Esteb v. Esteb, supra, the Court in Jackman v. Short (1941), Oregon, 109 P. (2d), 860 at page 872, said:

"Whether as necessaries within the contemplation of the common law rule, or as a provision for education within the purview of our statute, we believe that awards for a college education made in behalf of a child displaying sufficient capacity are permissible. Reason, as well as the public policy of this state, favorable as it is to higher learning, permits no other conclusion. The high esteem in which college training is held in this state is unmistakably indicated by the numerous colleges found in various parts of this state. Ordinarily, a child of divorced parents is in greater need of the help that a college education can give than one living in a home where marital harmony abides."

In Refer v. Refer (1936), 102 Mont. 121, 56 P. 2d 750, an order requiring one to pay his former wife in whose favor a decree of divorce had been rendered, the sum of $35.00 per month for tuition and other expenses of a college education of a son of the parties in the custody of the wife, was affirmed as against the husband's contention that the court was without jurisdiction to make an order requiring him to pay his former wife the sum of money specified for the purpose of sending his minor son to college, and that the statute requiring divorced parents to educate their minor children did not contemplate a college education.

It was held in Payette v. Payette (1931), 85 N. E. 297, 157 A. 531, that a parent against whom a divorce decree was awarded could be compelled to contribute to the support of his nineteen-year-old son who was attending college and was capable of self support.

In an action to compel payment of allowances made in an original divorce decree, which awarded the divorce to the defendant's wife and

decreed custody of their minor son to her, it appearing that the reason for bringing such action was to assure the minor son's education at college, it was held in Feek v. Feek (1936), 187 Wash. 573, 60 P. 2d, 686, that the order of the lower court to the effect that the defendant pay to assist the minor son in obtaining a university education, the sum of $25.00 per month from October to March, inclusive, of each year until further order of the court, and $40.00 per month for the remaining months of each year, was justified and reasonable.

In Cox v. Cox, 158 Or. 74, 74 P. 2d 983, it was held that the trial court did not err, in ordering that during the time the two younger children are in college they shall have additional money for their education.

\* \* \* \* \*

Thomas Jefferson once said: "I am not an advocate for frequent changes in laws and constitutions, but laws and institutions must go hand in hand with progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths discovered, institutions must advance also to keep pace with the times."

Great changes have taken place in the world since the Middlebury College case 115 years ago, and even since the Wynn v. Wynn case, 28 years ago. The ruling of Middlebury College v. Chandler was clearly based upon conditions which existed at that time. As was stated in the Esteb v. Esteb decision, supra: "An opportunity at that early date for even a common school education was small, for a high school education less, and for a college education was almost impossible for the average family, and was generally considered as being only within the reach of the most affluent citizens. While there is no reported case, it is hardly to be doubted that the courts at that time would even have held a high school education was unnecessary, inasmuch as very few were able to avail themselves of it.

"But conditions have changed greatly, in almost the century that has elapsed since that time. Where the college graduate of that day was the exception, today such a person may almost be said to be the rule."

We think that today in answering the question whether a college education is or is not a necessary within the contemplation of the law, we should not resolve the matter merely by the fact that the compulsory education laws compel a child to attend school under the threat of legal action only until he is eighteen years of age.

In the Esteb v. Esteb case, supra, the court stated: "It cannot be doubted that the minor who is unable to secure a college education is generally handicapped in pursuing most of the trades or professions of life, for most of those with whom he is required to compete will be possessed of the greater skill and ability which come from such an education."

Aside from this personal reason for encouraging higher learning for our youth there is today's imperative reason of public welfare.

Today the conflicting ideologies of the great powers of the world are in a competitive race for the minds of men. America and our vaunted

democratic way of life are faced with the greatest challenge of our history. The Russians are grimly determined to supplant the United States as the first world power and to make communism the earth-dominant political philosophy.

The United States which long has boasted of its technological supremacy, is being challenged by a most formidable competitor. We have come to a humiliating realization that Russia with her giant strides in technology and science, has not only caught up with us in the field of knowledge dealing with science and engineering, but has actually surpassed us. Witness their successful launching of the sputniks and their sending rockets to the moon.

How are we to meet the challenge of Soviet Russia? How other than by strengthening and improving our own system?

America's future depends largely on the capacity of our young people of today—democracy's leaders of tomorrow—to learn, to think, and to work. To cope with the world challenge that faces us, our youth must be trained to live as citizens, not merely in American society, but to live in an America caught up inextricably in an evolving world community which finds itself today in the throes of veritable technological and political revolutions. It requires the training of leaders of the future equipped to think and to work in both the sciences and the humanities. It requires an American citizenry that will understand other societies as well as American history and society. It is in the class rooms, the laboratories, and the libraries of our colleges where the insights and attitudes of tomorrow are being forged today. The kind of education our children receive today may well play an important role in determining our nation's future.

A changing world has shattered the old concept that a higher education is a luxury to be enjoyed only by the rich. Preparing our youth for possible service in the ranks of the creators and developers of civilization has become an imperative necessity.

The public policy of the State of Ohio clearly favors and encourages college education for our young people possessing the desire, aptitude, and capacity for higher learning. This is manifest by the fact that the State of Ohio maintains six state tax-suported universities and colleges: Ohio State University, Ohio University, Miami University, Bowling Green State University, Kent State University and Central State College, with Ohio State University alone having an enrollment of more than 20,000 students. Three Ohio cities—Cincinnati, Toledo, and Akron—maintain municipally supported universities. Few if any of the states surpass Ohio in the number of privately endowed institutions of higher learning.

In 1921 Ohio colleges had an enrollment of 50,985. By 1958, this number more than tripled, growing to 156,385 students. The 1959 enrollment is still larger by approximately 5 per cent.

Similarly national college enrollment also more than tripled from 1926 to 1958, growing from 1,002,131 to 3,258,556. (The national college enrollment in 1900 was 253,285 including 36,176 students in graduate and professional schools.)

Thus what was once the "exception" has become commonplace.

## DECISION

This case presents the question whether the Juvenile Court has the jurisdiction to require the father of a child whose custody had been given to the mother in a divorce decree, to support said child after he has reached his eighteenth birthday, but before he attains the age of twenty-one years, where such continued support beyond the age of eighteen is intended for the purpose of a college education for said child.

The duty of a father to provide for his minor child when the custody is in another is restricted to necessaries.

The question then is: Is a college education a necessary within the contemplation of the law?

It is difficult to lay down a general rule as to what are necessaries. It is a relative and not an absolute term.

The question of what sort of an education is necessary, is also a relative one. As the court declared in the Esteb v. Esteb case, supra: "The court should determine this in a proper case from all the facts and circumstances. Nor should the court be restricted to the station of the minor in society, but should, in determining this fact, take into consideration the progress of society and the attendant requirements upon the citizens of today."

We hold that considering the progress of society and our nation's need for citizens educated in the humanities and the sciences, a college education is a necessary where the minor's ability and prospects justify it.

In the normal situation where the father and the mother and children are in one household, the father, pursuant to §3102.03 R. C., is the head of the family. It is, therefore, normally his decision as to whether or not the child should have a college education. However, where the parents are divorced and the child is in the custody of the mother, it is then incumbent upon her to make the plans for the child's education. If in her judgment she believes the child possesses proper aptitude and desire to attend college, would appear that under the law, the father's responsibility for the child's support, continuing until the child is twenty-one, includes support of said child during his attendance at college until such child is twenty-one years of age.

Accordingly, the Court finds for plaintiff and orders that the support payments for James should continue at the rate of $15.00 per week until he reaches the age of twenty-one years.

The Court also finds that the defendant is in arrears in the sum of $240.00 for the support of the minor, James; also, the sum of $120.00 for medical expenses for the minor, Athena Calogeras.