**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re A.G.,* Slip Opinion No. 2014-Ohio-2597.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2597

IN RE A.G.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re A.G.,* Slip Opinion No. 2014-Ohio-2597.]**

*Child-custody proceedings ancillary to divorce—Authority of juvenile court upon transfer from common pleas court—Civ.R. 75—R.C. 3109.04—Child may be excluded from hearing on modification of visitation order.*

(No. 2012-2097—Submitted October 23, 2013—Decided June 19, 2014.)

APPEAL from the Court of Appeals for Ottawa County,

No. OT-11-003, 2012-Ohio-5109.

_____

SYLLABUS OF THE COURT

1.  When a domestic-relations court certifies an ongoing custody case to a juvenile court under R.C. 3109.04(D)(2), matters related to the original divorce-custody case continue to be domestic-relations matters, governed only by R.C. 3109.04.

2. A child is not a proper party in a divorce action or its ancillary custody proceedings, even if she is joined as a party defendant pursuant to Civ.R. 75(B)(2).

3. Although not a party to the action, a child who is the subject of custody litigation arising from a divorce has an interest in the matter.

4. A court has discretion to exclude from court proceedings a child who is the subject of custody litigation arising from a divorce case if, considering the totality of the circumstances, exclusion is in the best interest of that child.

5. Due process does not mandate that a child be permitted to attend custody proceedings that are ancillary to a divorce.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we decide whether a court may exclude from trial a child who is the subject of custody litigation arising from a divorce case. We first clarify that when a domestic-relations court certifies an ongoing custody case to a juvenile court under R.C. 3109.04(D)(2), matters related to the original divorce-custody case continue to be domestic-relations matters, governed only by R.C. 3109.04. And we hold that a child is not a proper party in a divorce action or its ancillary custody proceedings, even if she is joined as a party defendant pursuant to Civ.R. 75(B)(2). We recognize that although not a party to the action, a child who is the subject of custody litigation arising from a divorce has an interest in the matter, and we hold that in child-custody litigation arising from a divorce, a court has discretion to exclude the child from any proceeding if, in the totality of the circumstances, exclusion is in the best interest of that child.

{¶ 2} Because the Sixth District Court of Appeals correctly held that the trial court had discretion to exclude A.G., a nonparty, from a hearing in custody litigation ancillary to her parents' divorce, we affirm its judgment.

2

**RELEVANT BACKGROUND**

{¶ 3}   In early 1995, Lolita[1] (a Russian citizen) and Patrick (a United States citizen) met and married in Russia and settled in the United States directly thereafter.  A.G. was born in December 1995.

*Henry County Domestic-Relations Proceedings*

{¶ 4}   When Patrick filed for divorce in June 1998, the court granted his motion for custody of A.G., and he and Lolita reached an agreement on her visitation rights.

{¶ 5}   But in February 1999, Patrick absconded with A.G.  As a result, the domestic-relations court found Patrick in contempt of the agreed visitation order, issued a bench warrant for his arrest, and designated Lolita as the custodial parent.

{¶ 6}   According to Lolita, in June 1999, the Federal Bureau of Investigation tracked Patrick down in Florida.  When Patrick was arrested, he possessed $55,234 in cash, fake birth certificates for himself and A.G., and a fake identification card bearing his picture and the name "Michael James Phillips."  Law enforcement also discovered evidence that Patrick had been in Arizona and was planning to take A.G. to Costa Rica imminently.  The authorities returned A.G. to her mother.  As a result, Patrick was convicted of attempted interference with custody.

{¶ 7}   Nearly two years later, on February 23, 2001, the Henry County Domestic Relations Court approved a consent judgment entry of divorce, which resolved all of the issues between the parties except child support and visitation.  That same day, the court issued another judgment entry that established a schedule under which Patrick's visitation rights would expand over time.

---

[1] In order to protect A.G.'s identity, we do not use her parents' last names.

**{¶ 8}** Within weeks of the order, this time, Lolita absconded with A.G. One year later, according to a court-appointed guardian ad litem ("GAL"), A.G. was forcibly abducted from Lolita's Moscow home. Reportedly, a group of men entered the residence, injected Lolita and A.G.'s maternal grandmother with drugs, and tied them up, thereby disabling the women and permitting the men to kidnap A.G.

**{¶ 9}** After the GAL notified the domestic-relations court that the F.B.I. believed that Patrick was responsible for the abduction, the court determined that A.G. was at risk for serious physical and emotional harm and that it was in her best interest that neither parent be designated the residential parent or legal custodian. Accordingly, on July 25, 2002, it certified the case to the juvenile division, pursuant to R.C. 3109.04(D)(2), which authorized the juvenile court to place A.G. in the temporary custody of the county, pending a custody determination.

*Henry County Juvenile Court Proceedings*

**{¶ 10}** In turn, the juvenile court[2] determined that "the urgent nature of the circumstances and the child's imminent risk of harm" necessitated A.G.'s placement in the care and custody of the Henry County Department of Job and Family Services for her "protection, safety and best interest." That court also ordered law-enforcement officers to seize A.G., if any should find her.

**{¶ 11}** The next day, July 26, 2002, Patrick delivered the child to Henry County Department of Job and Family Services. A.G. remained in the temporary custody of the county for two months while the Department of Job and Family Services conducted an investigation.

---

[2] The same judge, Keith P. Muehlfeld, presided over the domestic-relations case and the juvenile case. Thus, both judgments entered on July 25, 2002, were signed by Judge Muehlfeld.

{¶ 12} On September 23, 2002, the juvenile court awarded custody of A.G. to Lolita and granted Patrick unsupervised visitation according to a standard schedule.

{¶ 13} Eventually, both parties moved out of Henry County. In 2002, Patrick moved to North Carolina. And in 2004, Lolita (and A.G.) moved to Ottawa County, Ohio. Accordingly, on February 10, 2006, the Henry County Juvenile Court transferred the case to the Ottawa County Juvenile Court, for proper venue.

*Ottawa County Juvenile Court Proceedings*

{¶ 14} The Ottawa County Juvenile Court promptly appointed a GAL, pursuant to Civ.R. 75(B)(2), which provides that a court may join the child of the parties as a party defendant and appoint a GAL when it is essential to protect the child's interests. On June 23, 2006, the GAL filed a motion for an emergency order to suspend Patrick's visitation. In doing so, she stated that A.G. was "under a tremendous amount of emotional pressure due to the outrageous and unbelievable history of this case." And the GAL stated that she was confident that the child's "emotional and mental anguish and stress * * * increase with each visit that she is required to spend with her father." The cause of A.G.'s trouble, the GAL concluded, was Patrick's "alleged and documented violent and unpredictable nature and history." For all of those reasons, she asserted that it was in A.G.'s best interest to remain exclusively with her mother at least for the time being.

{¶ 15} That same day, the juvenile court granted the emergency motion.

{¶ 16} But on February 8, 2007, the GAL notified the court that she was uncertain of her earlier recommendation and that in her view, a best-interest determination in this case required expertise beyond that possessed by any GAL. Therefore, she recommended that a psychologist evaluate A.G. and her parents to determine what would be in A.G.'s best interest. The GAL also recommended

that in the event of any trial, the juvenile court should excuse A.G. from appearing as a witness and instead interview her in chambers.

{¶ 17} The court ordered additional psychological evaluations and interviewed A.G. in chambers. As a result, on July 11, 2008, the juvenile court granted Patrick supervised visitation in Ottawa County only.

{¶ 18} Less than a year later, in February 2009, A.G. wrote a letter to her father wherein she stated that she had no intention of visiting him in North Carolina again. On September 14, 2009, Patrick responded by filing a motion for unsupervised visits in North Carolina.

{¶ 19} On October 14, 2009, counsel entered an appearance on behalf of A.G. and opposed Patrick's motion to expand his visitation rights and moved to terminate Patrick's then-existing visitation rights.

{¶ 20} On October 21, 2009, A.G. filed a motion to permit her attendance at trial. She was 13 years old at the time.

{¶ 21} Two days later, Lolita's counsel sought permission to withdraw from representation. In doing so, he explained that Lolita would be relying on the newly retained lawyer for the child and on her own pro se efforts. Moreover, counsel advised that Lolita had informed him that she was paying the bill for A.G.'s counsel and could not also employ separate counsel for herself. On November 18, 2009, and after some reluctance, the juvenile court granted Lolita's counsel's motion to withdraw.

{¶ 22} On February 9, 2010, the GAL filed a status report and revised recommendation in which she recommended that the court grant Patrick overnight, unsupervised visitation during which A.G. should be prohibited from using her cell phone except for 30 minutes a day and at a time designated by Patrick, or in the event of an emergency. In doing so, the GAL stated that she had recently, since the first part of November 2009, begun to study "the issue of parental alienation," which she described as "where a child rejects a parent for no

good reason." Even though the GAL acknowledged that the validity of parental alienation is disputed among both legal and mental-health professionals, she concluded that A.G. likely suffers from the affliction, which she believed could be cured only by a combination of unsupervised visitation with Patrick and A.G.'s and Patrick's participation in a "reunification program as determined by the Guardian Ad Litem."

{¶ 23} On May 27, 2010, the GAL broadened her position and moved for a change of custody to Patrick because of her now committed belief that A.G. was "severely alienated from her father by her mother," based on A.G.'s refusal to visit her father. And the GAL recommended that Lolita have no contact with the child "until proper reunification * * * with Patrick can occur."[3]

{¶ 24} Patrick joined the GAL's motion in all respects, while A.G. and her mother uniformly opposed it.

{¶ 25} On October 20, 2010, in preparation for a hearing on the motion, the juvenile-court judge conducted an in camera interview of A.G. Five days later, that judge denied A.G.'s motion to attend the hearing. In doing so, the judge characterized the dispute as being between the parents and concluded that A.G. had no constitutional right to be present. Noting that (1) A.G. would be represented by counsel during the proceedings, (2) her mother would also advance her interests during trial, and (3) A.G. had had an opportunity to express her wishes and concerns to the court during the in camera interview, the juvenile court held that it was in A.G.'s best interest to attend school, rather than court.

{¶ 26} The hearing took place on five days in early November 2010. A.G. was not in attendance.

---

[3] In the alternative, the GAL asked the court to order the parties to be evaluated by a "parental alienation expert" and to enter a "reunification program." Moreover, the GAL requested an order that Lolita "be responsible for any outstanding and/or future Guardian Ad Litem fees in the event the court or an alienation expert find that parental alienation exists in this case."

{¶ 27} Afterward, the juvenile court noted that "[a] large portion of the evidence presented * * * was a rehashing of the events that occurred from 1995 through 2005." And the court expressed empathy for A.G., whom it described as a "child caught in a web of parental hostility and ongoing conflict."

{¶ 28} On January 24, 2011, the juvenile court issued a comprehensive decision, which consisted of more than 300 findings of fact. It denied a change of custody to Patrick but granted Patrick unsupervised visitation in both Ottawa County and North Carolina. It further ordered that "Mother and Father shall not discuss these proceedings with the minor child, with the exception of advising [her] of times and arrangements for visits as ordered herein."

{¶ 29} A.G. appealed.

*The Sixth District Litigation*

{¶ 30} The Sixth District Court of Appeals rejected A.G.'s claim that the trial court violated her due-process rights when it denied her motion to attend the court proceeding, which it characterized as a "hearing for her father's motion for unsupervised visitation." 2012-Ohio-5109, ¶ 3-6. The court of appeals reasoned that because the case originated as a divorce, A.G. could not invoke the court's jurisdiction by filing a motion to modify a prior custody decree. *Id.* at ¶ 5, citing *Hanna v. Hanna*, 177 Ohio App.3d 233, 2008-Ohio-3523, 894 N.E.2d 355, ¶ 13-14 (10th Dist.). And because A.G. was represented at the hearing by counsel and had had the opportunity to convey her wishes directly to the court in an in camera interview, the Sixth District held that the trial court did not err in excluding A.G. from the proceedings. *Id.* at ¶ 6.

{¶ 31} On February 20, 2013, we accepted review of A.G.'s discretionary appeal. 134 Ohio St.3d 1467, 2013-Ohio-553, 983 N.E.2d 367. The sole proposition of law before us asserts:

The denial of a person, under the age of majority, the opportunity to participate in trial proceedings in which they have a direct interest, is a violation of that person's right to due process as guaranteed by the 14th Amendment of the U.S. Constitution and Article 1, Section 16, of the Ohio Constitution.

## ANALYSIS

{¶ 32} In support of her proposition of law, A.G. contends that she had a right to be present at the hearing because she was a party who had filed a motion to modify visitation. In doing so, she relies on the Due Process Clause of the United States Constitution and the Open Courts Amendment of the Ohio Constitution. A.G. points out that no statute or rule of procedure expressly forbids a child's attendance at a trial and therefore asks this court to correct the "existing standards and practices which treat children differently than adult persons."

{¶ 33} She asserts that she could have been excluded from the hearing only if she had failed to abide by established courtroom procedure. But A.G. does not claim that children possess an absolute right to be present at child-custody proceedings, subject only to proper decorum. Instead, she asks us to establish an "algorithm" (similar to competency determinations) for trial courts to apply to determine whether a specific child may attend a particular custody proceeding.

{¶ 34} In response, Patrick denies that A.G. is a party to this action. And citing R.C. 3109.04(E)(1)(b), which provides that the continuing jurisdiction of a court to modify a prior custody decree can be invoked only by the plaintiff and defendant in the underlying divorce action, he questions whether A.G.'s motion to modify visitation had any independent legal significance. In doing so, Patrick concedes that A.G. had an interest in the proceeding because she was the subject

of it, but he also urges the court to conclude that A.G. was afforded ample opportunities to be heard.

{¶ 35} Before turning to the merits, we address an important preliminary matter: mootness.

## A. Mootness Doctrine

{¶ 36} As a threshold issue, we must address whether A.G.'s claims are moot. In light of A.G. reaching the age of majority in December 2013, the substantive issues that were the subject of the November 2011 hearing are moot. More fundamentally, the question of whether A.G. was entitled to be present *at that particular hearing* is also moot. But because A.G.'s claim presents an unsettled constitutional question and a matter of public and great general interest, we have authority to proceed to the merits.

{¶ 37} The mootness doctrine provides, "American courts will not decide * * * cases in which there is no longer any actual controversy." *Black's Law Dictionary* 1100 (9th Ed.2009). " 'Although a case may be moot with respect to one of the litigants, this court may hear the appeal where there remains a debatable constitutional question to resolve, or where the matter appealed is one of great public or general interest.' " *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 16, quoting *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28, 505 N.E.2d 96 (1987), paragraph one of the syllabus.

{¶ 38} A.G. presents an important constitutional question, which we have not had the opportunity to decide. A child's right to participate in custody litigation is an evolving issue. *See, e.g.*, United Nations Convention on the Rights of the Child, Part I, Article 9 (when children are interested parties in proceedings, they "shall be given an opportunity to participate in the proceedings and make their views known"); Bridge, *Involving Youth in the Dependency Court Process: The Washington State Experience*, 48 Fam.Ct.Rev. 284 (2010) (Washington

recently enacted legislation that provides children with a right to be present during dependency actions). Nonetheless, because of the protracted nature of custody litigation, such claims evade our review. This case, which took four years to reach us,[4] amply confirms that observation. Moreover, a younger child who is the subject of custody litigation is much less likely to assert a right to attend trial over a parent's wishes. Thus, under ordinary circumstances, a child who is so excluded is likely to be emancipated by the time review could be had in this court. *See, e.g.*, *In re Maria M.*, 6th Dist. Wood No. WD-03-092, 2004-Ohio-3798 (dismissing an appeal in a dependency action as moot because the child had reached the age of majority and therefore the juvenile court had lost jurisdiction over the case). That is the case here. In light of the necessarily limited duration of the juvenile court's continuing jurisdiction, we are justified in invoking the limited exception to the mootness doctrine in order to decide this important constitutional issue.

{¶ 39} We therefore turn our attention to the merits. In doing so, we first examine the question of jurisdiction in order to identify the nature of this litigation and the proper parties to it.

### B. Jurisdiction

{¶ 40} For the reasons explained below, we conclude that this litigation is custody litigation ancillary to a divorce to which A.G. is not a proper party.

*Original jurisdiction of the domestic-relations court*

{¶ 41} "Divorce and ancillary custody actions are purely matters of statute." *Hanna*, 177 Ohio App.3d 233, 2008-Ohio-3523, 894 N.E.2d 355, at ¶ 9, citing *Shively v. Shively*, 10th Dist. Franklin No. 94APF02-249, 1994 WL 521184 (Sept. 22, 1994), citing *State ex rel. Papp v. James*, 69 Ohio St.3d 373, 379, 632

---

[4] Patrick's motion for unsupervised visits was filed on September 14, 2009. This court heard oral argument on October 23, 2013.

N.E.2d 889 (1994). "R.C. 3109.04 governs the domestic relations court's allocation of parental rights and responsibilities and sets forth the procedures and standards courts are to use in proceedings pertaining to such matters." *Id.* at ¶ 10, citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999).

{¶ 42} After it issues an initial custody decree, the domestic-relations court retains jurisdiction to modify that order. R.C. 3105.65(B); *see also Loetz v. Loetz*, 63 Ohio St.2d 1, 2, 406 N.E.2d 1093 (1980). But the authority to do so "is not automatic." *Hanna* at ¶ 10. To the contrary, " '[t]he General Assembly * * * has restricted the exercise of judicial authority with respect to modification of a prior decree allocating parental rights and responsibilities.' " *Id.*, quoting *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶ 28.

{¶ 43} According to R.C. 3109.04(E)(1)(b),[5] only "[o]ne or both of the parents under a prior decree * * * may file a motion requesting that the prior decree be modified * * * " R.C. 3109.04(E)(1)(b). Thus, the General Assembly made clear that only a parent, and not a child who is the subject of such an order, has the authority to invoke the jurisdiction of a domestic-relations court to modify its prior custody decree issued under R.C. 3109.04(A)(1). R.C. 3109.04(E)(1)(b); *Hanna* at ¶ 11 (explaining that R.C. 3109.04(E)(1)(b) limits who may invoke the court's continuing jurisdiction).

{¶ 44} We recognize that the Civil Rules, which govern in divorce actions, provide: "When it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem, and legal counsel, if necessary for the child and tax the costs." Civ.R. 75(B)(2). But the appointment of a GAL is procedural, not jurisdictional. *In re Height*, 47 Ohio App.2d 203, 206, 353 N.E.2d 887 (1975). Thus, because the

---

[5] This case does not involve a shared-parenting decree, modifications of which are governed by R.C. 3109.04(E)(2).

jurisdiction of the court in divorce cases is limited by statute, and is limited to the question at issue as between the plaintiff and the defendant, a child is not a proper party in a divorce action or its ancillary custody proceedings. [6] *Schlenker v. Ferdon*, 21 Ohio App. 222, 153 N.E. 113 (1st Dist.1926). And appointment of a GAL on the authority of Civ.R. 75 does not make a child a proper party to a divorce action or its ancillary custody proceedings. *Id.*

{¶ 45} For all of these reasons, A.G. was not a proper party to her parents' divorce, and she lacked the power to invoke the domestic-relations court's jurisdiction to modify its prior decree.

{¶ 46} That this case was later certified to a juvenile court does not change the court's subject-matter jurisdiction and thus does not change A.G.'s status as a nonparty.

*Upon certification to the juvenile court*

{¶ 47} When the Henry County Domestic Relations Court certified this case to the Henry County Juvenile Court under R.C. 3109.04(D)(2), all matters related to the  original divorce-custody case continued to be domestic-relations matters, governed only by R.C. 3109.04. That is so because the domestic-relations court relinquished its jurisdiction to the juvenile court and transferred the exclusive power to hear the case to it.

{¶ 48} R.C. 3109.04(D)(2) provides:

If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither

---

[6] Contrary to the dissent's position, there is no tension for this court to resolve with *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. *Williams* resolved a conflict regarding a child's right to independent counsel, pursuant to R.C. 2151.352, in two different types of proceedings that both originated in the juvenile court: juvenile delinquency cases and proceedings to terminate parental rights. Our present interpretation of R.C. 3109.04 in the context of custody litigation is simply not applicable to the construction of R.C. 2151.352 in the context of juvenile delinquency or termination-of-parental-rights proceedings.

parent to be designated the residential parent and legal custodian of the child, it may * * * certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction.

{¶ 49} Upon certification, a juvenile court has exclusive and continuing jurisdiction "to modify the judgment and decree of the court of common pleas as the same relate to the custody and support of children." R.C. 2151.23(D); *Loetz*, 63 Ohio St.2d at 3-4, 406 N.E.2d 1093 (explaining that a court that obtains jurisdiction over child custody by way of certification retains continuing and exclusive jurisdiction); *Handelsman v. Handelsman,* 108 Ohio App. 30, 35-36, 160 N.E.2d 543 (7th Dist.1958) (explaining that there is no statutory provision for a juvenile court to certify a case back to the common pleas court). Indeed, the certification "clothe[s] the juvenile court with jurisdiction to proceed in divorce cases * * * in a matter respecting the custody and support of a minor, as the common pleas court would have been authorized originally to do." *Calogeras v. Calogeras*, 82 Ohio Law Abs. 438, 163 N.E.2d 713, 714 -715 (Juv.1959).

{¶ 50} Therefore, in deciding a custody issue in a domestic-relations court's stead, a juvenile court is also required to comply with R.C. 3109.04. R.C. 2151.23(F)(1) ("The juvenile court shall exercise its jurisdiction in child custody matters in accordance with [R.C.] 3109.04 * * *"). "The juvenile court's custody determination is thus harmonized with the prior custody determination * * *." *In re Poling*, 64 Ohio St.3d 211, 216, 594 N.E.2d 589 (1992). Because R.C. 3109.04 continued to govern the matter, A.G. continued to lack the authority to invoke the jurisdiction of the court to modify a prior custody decree.

{¶ 51} That this case was later transferred to another juvenile court for proper venue does not change the court's subject-matter jurisdiction and thus does not change A.G.'s status as a nonparty.

*Upon change of venue*

{¶ 52} When this case was transferred to Ottawa County, the Ottawa County Juvenile Court was, in turn, clothed with the jurisdiction of the Henry County Domestic Relations Court.

{¶ 53} Change of venue does not affect the subject-matter jurisdiction of a court. *See Morrison v. Steiner*, 32 Ohio St.2d 86, 290 N.E.2d 841 (1972), paragraph one of the syllabus (explaining that subject-matter jurisdiction is the power to decide a case, while venue relates to the place that a case may be heard). Thus, when the Henry County Juvenile Court transferred this case to the Ottawa County Juvenile Court for proper venue, the divorce-custody proceedings remained within the realm of domestic relations, governed exclusively by R.C. 3109.04.

{¶ 54} For the reasons explained, the motion filed by A.G., a nonparty, did not invoke the jurisdiction of the Ottawa County Juvenile Court to modify a prior custody order. R.C. 3109.04(E)(1). And the hearing from which A.G. claims to have been improperly excluded was a proceeding to determine her father's motions.

{¶ 55} Nonetheless, we recognize that although not a party to the action, a child who is the subject of custody litigation has an interest in the matter. Therefore, our inquiry is not at an end. Accordingly, we turn to A.G.'s claimed equal-protection and due-process rights to be present at any hearing in which she has an interest.

C. Equal Protection and Due Process

{¶ 56} In challenging the constitutionality of the trial court's decision to exclude her from the hearing on a motion to modify its prior custody decree, A.G.

directs this court's attention to the Equal Protection Clause of the United States Constitution, Fourteenth Amendment to the U.S. Constitution, and the Due Process Clauses of the United States and Ohio Constitutions, *id.* and Ohio Constitution, Article I, Section 16. Those provisions state:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Fourteenth Amendment to the U.S. Constitution.

> All courts shall be open, and *every person*, for an injury done him in his land, goods, person, or reputation, *shall have a remedy by due course of law*, and shall have justice administered without denial or delay.

(Emphasis added.) Ohio Constitution, Article I, Section 16.

{¶ 57} A.G. relies solely on the language of those provisions and cites no cases in support of her proposition. She reasons that the constitutions must be read to require the court to place her on equal footing with her parents and afford her the same process of law afforded to them. We will address each of her constitutional claims in turn.

1. Equal Protection

{¶ 58} A.G.'s equal-protection argument is flawed for two reasons: she is neither similarly situated to her parents nor entitled to be treated equally with them as a matter of constitutional law.

{¶ 59} " 'The Equal Protection Clause does not forbid classifications.' " *Harsco Corp. v. Tracy*, 86 Ohio St.3d 189, 192, 712 N.E.2d 1249 (1999), quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). " 'Of course, most laws differentiate in some fashion between classes of persons.' " *Id.* The Equal Protection Clause " 'simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.' " *Id.*

{¶ 60} As a nonparty, A.G. is not similarly situated to her parents and is therefore not entitled by the Equal Protection Clause to be treated by the court the same as her parents. Thus, on that basis alone, we must reject A.G.'s equal-protection claim.

{¶ 61} Moreover, "although children generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for 'concern, * * * sympathy, and * * * paternal attention.' " *Bellotti v. Baird*, 443 U.S. 622, 635, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1978), quoting *McKeiver v. Pennsylvania*, 403 U.S. 528, 550, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Because the constitutions permit—and sometimes require—the courts to distinguish between children and adults, A.G.'s claim that she is entitled to be treated like her parents is fundamentally and necessarily wrong.

{¶ 62} But as a child who has an interest in the outcome of custody litigation between her parents, A.G. has a right to notice and opportunity to be heard on the narrow issue of her wishes and concerns regarding allocation of her parents' rights to custody and visitation. Accordingly, we turn our attention to her due-process arguments.

## 2. Due Process

{¶ 63} There is no absolute constitutional right[7] of any interested person, including a party, to be admitted to a court proceeding. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (holding that a criminal defendant's Sixth Amendment right to confront witnesses is not absolute and he therefore may be excluded from his own trial for disorderly courtroom conduct); *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (declining to extend to prisoners the Fourteenth Amendment due-process right to physical access to the courts); *State v. Ostrowski*, 30 Ohio St.2d 34, 282 N.E.2d 359 (1972) (holding that, pursuant to a separation-of-witnesses order, parents could be excluded from their child's trial on delinquency charges until after they had testified); *In re Vandale*, 4th Dist. Washington No. 92CA31 (June 30, 1993), 1993 WL 235599, *2, quoting *Mancino v. Lakewood*, 36 Ohio App.3d 219, 221, 567 N.E.2d 1138 (8th Dist.1987) (recognizing that there is "no support in the Constitution or judicial precedent for the proposition that a prisoner has an absolute due process right to attend the trial of a civil action," including a permanent-custody hearing).

{¶ 64} Instead, the fundamental "requirement of due process in any proceeding * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187 14 L.Ed.2d 62 (1965), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950).

---

[7] Because A.G. cites both the federal and state due-process clauses, we note that Ohio's "due course of law" provision is the equivalent of the "due process of law" protections in the United States Constitution. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420 (2007), at ¶ 48, citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941).

**{¶ 65}** In order to evaluate the sufficiency of A.G.'s opportunity to be heard,[8] we return to a discussion of R.C. 3109.04, which sets out the applicable procedure.

*Statutory procedure to modify a prior custody decree*

**{¶ 66}** A court may grant the request of one or both parents to modify a prior decree allocating their parental rights only if there has been a change in circumstances and the modification is necessary to serve the best interest of the child. R.C. 3109.04(E)(1)(a) and (b); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997) (explaining that the prohibition on modifying a prior custody decree absent a change in circumstances promotes stability in the life of the child).

**{¶ 67}** In determining the child's best interest, the court must consider all relevant factors, including:

(a) The wishes of the child's parents regarding the child's care;

(b) *If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court*;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

---

[8] Notice is not an issue in this case.

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(Emphasis added.)  R.C. 3109.04(F)(1).

**{¶ 68}** Further, in determining the child's best interest, "the court, in its discretion, may and, upon the request of either party, shall interview in chambers * * * any or all of the involved children."  R.C. 3109.04(B)(1).

The interview *shall be conducted in chambers*, and no person other than the child, the child's attorney, the judge, any necessary court

personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview.

(Emphasis added.)  R.C. 3109.04(B)(2)(c).

{¶ 69} We have affirmed the constitutionality of R.C. 3109.04(B) to the extent that it grants the trial court the authority to interview a child in camera over the objection of a parent.  *In re Whitaker*, 36 Ohio St.3d 213, 522 N.E.2d 563 (1988).  In *Whitaker*, we rejected a parent's claim that her due process rights were violated by her exclusion from the in camera interview of her child.  In doing so, we emphasized the protective nature of the in camera interview by explaining that its purpose "is to protect the child from having to say negative things about either party or express a custodial or visitation preference in the presence of the parties."  *Id.* at 28.  And we concluded that there was no due-process violation involved when the court privately interviews the child in chambers over a parent's objection:  "This is especially true where the only inquiry is into the child's custodial or visitation preference, where the court informs the parties of the contents of the interview, or where the attorneys are present during the interview."  *Id.*

{¶ 70} This case presents the flip side of *Whitaker*: a child's exclusion from a hearing undertaken to consider the balance of the R.C. 3109.04(F) factors.  For the reasons explained below, we hold that due process does not mandate that a child be permitted to attend custody proceedings that are ancillary to a divorce.

{¶ 71} R.C. 3109.04 provides that a child who is the subject of custody litigation ample opportunity to be heard on the relevant issues.  In addition to the in camera interview, Ohio trial courts have several potential avenues to receive information about the child's wishes and concerns.  Saywitz, Camparo & Romanoff, *Interviewing Children in Custody Cases: Implications of Research and*

*Policy for Practice*, 28 Behav.Sci.Law 542 (2010) (explaining that typically courts may receive information about a child's wishes and concerns directly from the child or by information filtered through a lawyer, a psychologist, or a GAL).

{¶ 72} Indeed, a court may interview the child in chambers, R.C. 3109.04(B)(1), receive relevant information about the child from physicians and mental-health professionals, R.C. 3109.04(C) (providing that the trial court has authority to "order the parents and their minor children to submit to medical, psychological, and psychiatric examinations"), and consider a child's interests as advocated by a GAL, R.C. 3109.04(B)(2). Courts also have the option of appointing an attorney for the child, when appropriate, thereby creating another avenue for information. Civ.R. 75(B)(2). When the child's interests are aligned with a parent, as a practical matter, the child's wishes and concerns will be advanced by that parent.

{¶ 73} Moreover, the presence of the child's attorney or GAL at trial further ameliorates any due-process concern. *See Whitaker,* 36 Ohio St.3d at 218, 522 N.E.2d 563. For these reasons, we not only reject the notion that due process mandates that a child be permitted to attend any custody proceeding in which she has an interest, we also recognize that under certain circumstances, a court will properly exclude a child from such proceedings.

{¶ 74} In addition to determining the child's best interest with respect to custody and visitation, a trial court is also charged with protecting the child's interests as the litigation proceeds. Several statutory mechanisms, including the in-camera interview, exist to insulate the child from her parents' conflict. For example, the General Assembly has expressly forbidden the parents to even attempt to obtain a written or recorded statement from the child regarding her wishes and concerns. R.C. 3109.04(B)(3). If tendered, the court is expressly forbidden to consider such a statement. *Id.* And if, after interviewing a child, the court determines that she lacks sufficient reasoning ability to express her wishes

and concerns or if the court determines *for any reason* that it is not in the child's best interest to determine her wishes and concerns, the court shall not make such a determination. R.C. 3109.04(B)(2)(b).

{¶ 75} Moreover, the court's authority to appoint a GAL enables it to protect the child's interests in innumerable ways. Sup.R. 48(D)(1) (providing that the responsibility of the GAL is to represent the best interest of the child); *e.g.*, *Glimcher v. Glimcher*, 29 Ohio App.2d 55, 65, 278 N.E.2d 37 (10th Dist.1971) (holding that when one parent attempts to cause a minor child to testify against the other parent in a divorce action, it is the responsibility of the court to appoint a GAL to protect the interests of the child by filing motions and objections to preclude or limit such testimony). Thus, the trial court has considerable latitude but must manage the litigation itself in a manner that will also achieve what is in the child's best interest. *Id.*

{¶ 76} For all those reasons, we conclude that a court has the discretion to exclude from court proceedings a child who is the subject of custody litigation arising from a divorce case if, considering the totality of the circumstances, exclusion is in the best interest of that child.

*A.G.'s opportunity to be heard*

{¶ 77} The trial court did not violate A.G.'s due-process rights or abuse its discretion when it excluded her from the November 2010 hearing.

{¶ 78} Before denying A.G.'s motion to attend trial, the juvenile court interviewed A.G. in chambers, and A.G. thus had an opportunity to convey her wishes and concerns directly to the court. Moreover, the court ruled that A.G. would be permitted to appear at the hearing as a witness. A.G. told the court that "she believed that she had sufficiently articulated her wishes and concerns in full." Emphasizing that A.G.'s interests would be advanced at trial by her attorney and her mother, the juvenile court determined that it was in A.G.'s best interest to go to school, rather than court. In doing so, it considered that A.G.'s

counselor believed that A.G. was sufficiently mature to attend the hearing. And it necessarily rejected A.G.'s arguments that she was "of sufficient age and maturity to understand and appreciate the nature of these proceedings" and that it was unlikely that she would be traumatized any more seriously than she already had been by her parents' behavior.

{¶ 79} In preparation for the hearing on Patrick's motions, A.G.'s attorney filed motions, propounded interrogatories, and issued subpoenas on her behalf. And during the hearing, A.G. was, in fact, represented by counsel, who offered exhibits, called witnesses, and cross-examined those called by others. A.G.'s counsel and Lolita both argued at trial and in posthearing briefs that it was in A.G.'s best interest that the court terminate Patrick's visitation rights. Likewise, the GAL participated in trial and advanced what she saw as A.G.'s best interest. Finally, in rendering its decision, the juvenile court considered input from mental-health professionals who had evaluated A.G. and her parents.

{¶ 80} Members of this court can debate whether the trial court's ultimate decision to exclude A.G., then 13 years old, was eminently reasonable or a close call. But we cannot honestly debate whether the juvenile court abused its discretion in ordering A.G. out of the courtroom and into the classroom. It did not.

{¶ 81} We likewise decline A.G.'s invitation to announce an algorithm for determining whether a child who is the subject of the litigation should be excluded from custody proceedings. For one reason, the governing best-interest standard needs no clarification. Moreover, the decision to allow a child to be present in court involves consideration of a "host of abilities that come to maturity at different points in development, many of which do not have simple linear trajectories and are highly dependent on the context." Saywitz, Camparo & Romanoff, *Interviewing Children in Custody Cases: Implications of Research and Policy for Practice*, 28 Behav.Sci.Law 547 (2010). The court's duty to protect

children from their parents' conflict and sometimes from themselves is undeniably part of that equation.

{¶ 82} The juvenile court in this case considered relevant and appropriate factors. Accordingly, we find no error in the Sixth District's judgment affirming that decision.

## CONCLUSION

{¶ 83} For the reasons explained, the judgment of the Sixth District is affirmed. This case is remanded to the juvenile court for further proceedings.

Judgment affirmed.

O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

KENNEDY, J., concurs in judgment only.

PFEIFER and O'NEILL, JJ., dissent.

_____

**O'NEILL, J., dissenting**.

{¶ 84} I do not object to the syllabus law as stated by the court. I do, however, disagree with the result, and I believe that the law stated in the court's syllabus compels a different result when applied to this case. A child who is the subject of custody proceedings has a due-process right and a constitutional right to be involved in and present at the proceedings.

{¶ 85} While I believe that the majority is correct in stating that "[d]ue process does not mandate that a child be permitted to attend custody proceedings that are ancillary to a divorce," paragraph five of the syllabus, in my view a child's right to be present may be restricted only if the totality of the evidence clearly and convincingly demonstrates that exclusion is in the child's best interest. Here, the evidence clearly demonstrates that the child's best interest was subordinated to the wishes of the litigious parents and their lawyers. And even though the trial court accepted her motion to be treated as a party, and even though A.G.'s attorney was present throughout the trial proceedings, A.G. herself

was excluded from the hearings where her very future was at stake. At the time of the hearing, she was 15, and her history of suffering as a result of her parents' dispute is well documented in the record. The trial court made no attempt to justify its ruling that A.G. could not attend the custody hearing—a hearing being held, ironically, on her own motion. Although the trial court held an in camera hearing as to the child's wishes for placement, the trial court did not even analyze whether A.G. was of sufficient age and maturity to attend and participate in those very proceedings. I cannot join in the majority's judgment that the trial court's ruling to exclude her was not an abuse of discretion, as it is patent that the trial court refused to exercise proper discretion in so ruling.

{¶ 86} Ohio Constitution, Article I, Section 16, provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Here, the trial court proceeded to judgment on the minor child's motion without allowing the minor child to be present. The court specifically ruled that A.G. had not met her burden of proof: "[T]he minor child (and by inference, Mother) has failed to show by clear and convincing evidence that an extraordinary circumstance exists to terminate father's visits. * * * IT IS HEREBY ORDERED that the Motion to Terminate Visitation filed on behalf of the minor child is hereby DENIED."

{¶ 87} It is beyond cavil that due process and open courts require better than this. A court cannot place its thumb on the scales of justice by excluding the proponent of a motion from the courtroom and then deny that motion for lack of evidentiary support.

{¶ 88} To be sure, a trial court acts within its discretion when it refuses to make a child a party to a custody dispute arising from a divorce. Civ.R. 75(B)(2) provides: "[W]*hen it is essential* to protect the interests of a child, the court *may* join the child of the parties as a party defendant and appoint a guardian ad litem

26

and legal counsel, if necessary, for the child and tax the costs." (Emphasis added.) The rule's plain terms vest discretion in the trial court on such matters, and I do not disagree with either the rule or the majority's reliance on it. Moreover, I am not concerned with the court's conclusion that under the rule a child is not a proper party in an ancillary custody action to a divorce. But I must note that this rule is in direct tension with cases in which the custody order did not arise from a divorce, a tension that the majority's analysis fails to resolve. In *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, we held that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *Id.* at syllabus. There may yet be a solution for this tension, but the majority does not provide it.

{¶ 89} I cannot envision another situation in which the law would countenance a person being made a party to a case and filing a dispositive motion, only to be precluded from personally supporting that motion in court. Now, it is plain that the trial court must have some discretion in such matters; obviously, the best interest of a three-year-old or a six-year-old child will clearly outweigh any benefit in allowing that child to directly participate in court proceedings. But here, the trial court described the 15-year-old child as "pleasant and engaging" and indicated that the child's decision to file the motion to terminate visitation with her father stemmed from a discussion with one of her friends, "who had been successful in terminating a visiting relationship with her [own] father." Moreover, the trial court admitted that although it would be in her best interest to have a relationship with both of her parents, "[s]he is an only child caught in a web of parental hostility and ongoing conflict." Given these circumstances, the trial court's decision to prevent the child from participating was not supported by any credible evidence, let alone clear and convincing evidence. Even under the

standards announced by the court today, that decision should be reversed. Accordingly, I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Howard C. Whitcomb III, for appellant.

Hallett, Hallett & Nagel, Timothy W. Hallett, and Eric K. Nagel, for appellee.

_____