[Cite as *In re J.H.*, 2026-Ohio-582.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| IN RE: J.H. AND B.S. | : |
| | :   C.A. Nos. 2025-CA-40, 2025-CA-41 |
| | : |
| | :   Trial Court Case Nos. C0042801-0C, |
| | :       P0009453-0C |
| | : |
| | :   (Appeal from Common Pleas Court- |
| | :   Juvenile Division) |
| | : |
| | :   **FINAL JUDGMENT ENTRY &** |
| |     **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 20, 2026, the appeals are dismissed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

COLIN P. COCHRAN, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee, Greene County CSEA

HANSEMAN, J.

{¶ 1} These consolidated cases are before us on appeals of R.H. ("Father") from juvenile court orders finding him in contempt for non-payment of child support and imposing jail sentences. The first appeal involves Case No. C0042801-0C ("Case C"), and the second concerns Case No. P00009453-0C ("Case P"). According to Father, the juvenile court abused its discretion in imposing the maximum term of incarceration for the contempt findings.

{¶ 2} After reviewing the record, we find the appeals moot, as Father's sentence has been completed, and he has failed to offer evidence from which an inference can be drawn that he will suffer some collateral disability or loss of civil rights from the judgments. Accordingly, the appeals are dismissed as moot.

I. Facts and Course of Proceedings

{¶ 3} In Case C, the Greene County Child Support Enforcement Agency ("CSEA") filed an administrative support order in December 2009 ordering Father to pay a total of $230.58 per month in child support for his minor child, J.H., who had been born in February 2009. The CSEA also issued an order for Father to seek work. Subsequently, in September 2013, the court found Father in contempt (first offense) for failing to pay child support as ordered. The court terminated child support in 2013 at the request of D.S. ("Mother"), but child support was reinstated in 2017. The court ordered Father to pay $236.92 monthly in child support, $75 monthly for an arrearage, and a 2% processing fee. In September 2018,

the State, on CSEA's behalf, filed another motion for contempt for nonpayment of support. In November 2018, the court found Father in contempt (second offense) and ordered his arrest. Subsequently, the court sentenced Father to 60 days in jail.

{¶ 4} Another motion for contempt was filed in October 2021 based on Father's failure to pay support, but the court dismissed it in November 2022 due to a failure of service and a failure to file a motion for new service. In February 2023, CSEA filed another motion for contempt for failure to pay child support. After an extended period of time to obtain service, the court found Father in contempt again (third offense) in September 2023 and issued a seek-work order and a capias for Father's arrest. Father did not appear for his sentencing hearing; he was eventually arrested and sentenced to 90 days in jail, of which 60 days would be suspended if Father paid $2,000 to the Greene County CSEA.

{¶ 5} Case P followed the same process, except it began with a paternity complaint. In October 2018, Mother filed a paternity complaint alleging that Father was the "natural parent" of a minor child born in 2017. Although Father was served, he failed to appear and failed to undergo DNA testing. As a result, after a hearing, the court adjudicated Father as the natural father of the child, B.S. The court ordered Father to pay child support of $221.90 per month plus a 2% processing fee, retroactive to November 1, 2018. Magistrate's Decision and Order Adopting Decision (Dec.19, 2018). In October 2019, CSEA filed a contempt motion against Father for failure to pay support. Father failed to appear at any hearings, and the court filed an order on June 16, 2020, finding him in contempt (first offense). The court later filed an order sentencing Father to 30 days in jail, with the sentence suspended if Father paid support as ordered. Judgment Entry (Nov. 16, 2020). Another contempt motion was filed in October 2021, again based on failure to pay child support, but the motion was dismissed in November 2022 due to service issues. Yet another contempt motion was filed

3

in February 2023, and the court found Father in contempt again (second offense) in September 2023.

{¶ 6} Ultimately, the court held a sentencing hearing for both cases in July 2025. At that time, in Case P, Father had a total arrears balance of $11,480.13. In Case C, Father had a total arrears balance of $14,273.73. *See* Transcript of Sentencing Hearing (July 25, 2025), 6-12. The court sentenced Father to 90 days in jail in Case C, with 60 days suspended if Father paid $2,000 to CEA on the arrearage, and 60 days in jail in Case P, with 30 days being suspended if Father paid $2,000 on the arrearage on that case. The court imposed the sentence in Case P to run consecutively to Case C and further ordered that if Father paid $4,000 to CSEA, he would serve a total of 60 days with no good-time credit. If payment were not made, Father would serve the full 150 days with no good-time credit. Judgment Entry (July 25, 2025), p. 1-2.

{¶ 7} Father timely appealed from the decisions in both cases, and we consolidated the appeals.

## II. Discussion

{¶ 8} Father's assignment of error states:

**THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING THE MAXIMUM TERM OF INCARCERATION.**

{¶ 9} Father claims that the trial court abused its discretion in imposing the maximum jail terms despite the presence of mitigating factors. Father argues that he took actions to significantly support his children and their mother and had continuously given them money and gifts. In addition, Father notes that Mother said she would seek to have the court support orders withdrawn, and he was under the impression she had done so. According to Father, he only became aware that court orders were still active when he was arrested. Father has

4

not challenged the contempt findings. Instead, he has contested only the imposition of maximum sentences.

{¶ 10} In responding, CSEA asserts that Father's appeal is moot because his 150-day sentence was completed on December 22, 2025, and Father failed to present evidence of a collateral disability or loss of civil rights due to the judgment. We agree with CSEA.

{¶ 11} "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). "Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the parties." *Id.*, citing *In re A.G.*, 2014-Ohio-2597, ¶ 37. "An issue is moot 'when it has no practical significance and, instead, presents a hypothetical or academic question.'" *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55, quoting *State v. Moore*, 2015-Ohio-2090, ¶ 7 (4th Dist.).

{¶ 12} An exception to the mootness doctrine applies where collateral consequences exist. *Cyran* at ¶ 9, citing *State v. Golston*, 71 Ohio St.3d 224, 227 (1994). "Where a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." *State v. Wilson*, 41 Ohio St.2d 236 (1975), syllabus. "The same principle applies in a contempt scenario. An appeal regarding a contempt sentence is moot after the jail term has been served unless the contemnor can demonstrate that he or she will suffer a collateral disability or loss of civil rights based on the finding of contempt." *Matter of N.Q.*, 2024-Ohio-1296, ¶ 10 (2d Dist.), citing *Harris v. Omosule*, 2010-Ohio-1124, ¶ 6 (2d Dist.) and *Springfield v. Myers*, 43 Ohio App.3d 21, 25-26 (2d Dist.1988). "This principle applies to both civil and criminal contempt matters. *Id.*,

5

citing *Jenkins v. Jenkins*, 1987 WL 4782 (2d Dist. Apr. 15, 1987). (Other citation omitted.)

{¶ 13} Finally, a defendant has the burden "to establish at least an inference that he will suffer some collateral disability or loss of civil rights." *Harris* at ¶ 6, citing *State v. Berndt,* 29 Ohio St.3d 3 (1987). Here, Father made no such attempt after CSEA filed its brief. Our calculations indicate, as CSEA has said, that Father's jail terms ended in December 2025, and Father has failed to offer any evidence from which an inference can be drawn that he will suffer some collateral disability or loss of civil rights from the judgments. Accordingly, Father's appeal is dismissed as moot.

### III. Conclusion

{¶ 14} Having found the appeals moot, the appeals are dismissed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.

6